## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT (BRIDGEPORT)

-------------------------------------------------------------X     Chapter 7

In re:

                 Case No.:19-51232

      DALE MORGADO,

                Debtor.

-------------------------------------------------------------X
      ROBERT LEE RUSZKOWSKI, JR.,
      DANA RENEE GRIFFITH and
      JILL KATHLEEN KING,

              Plaintiffs,

                        Adv. Pro. No.: _____

     -against-

      DALE DEBTOR,

                Debtor.

-------------------------------------------------------------X

### COMPLAINT TO OBJECT TO DISCHARGE OF DEBTOR

      The above-captioned plaintiffs Robert Lee Ruszkowski, Jr., Dana Renee Griffith, and Jill Kathleen King (collectively, "Plaintiffs") by and through their attorneys, Ivey, Barnum & O'Mara, LLC, allege for their complaint against debtor Dale Morgado ("Debtor") as follows:

### NATURE OF THE ACTION

      1.    Plaintiffs bring this adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, to object to the discharge of the Debtor under 11 U.S.C. § 727(a)(4).

### JURISDICTION AND VENUE

      2.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

      3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

5.      On September 13, 2019, Debtor filed a petition in bankruptcy under Chapter 7 of Title 11 of the United States Code.  Debtor is an attorney who is/was licensed to practice law in the sates of Connecticut, New York, and Florida.

6.      Plaintiff Robert Lee Ruszkowski, Jr. ("Mr. Ruszkowski") is a resident of the State of Illinois, and is the son of Kathleen Ruszkowski, and the brother of Dana Renee Griffith and Jill Kathleen King.

7.      Plaintiff Dana Renee Griffith ("Dr. Griffith") is a resident of the State of North Carolina, and is the daughter of Kathleen Ruszkowski, and the sister of Mr. Ruszkowski and plaintiff Jill Kathleen King.

8.      Jill Kathleen King ("Ms. King") is a resident of the State of Colorado, and is the daughter of Kathleen Ruszkowski, and the sister of Mr. Ruszkowski and Dr. Griffith.

9.      Plaintiffs are creditors of the Debtor.

## GENERAL ALLEGATIONS

10.      This action arises from Debtor's negligence, fraud, and breach of fiduciary duty in his legal representation of in his representation of Plaintiffs.  Plaintiffs hired Debtor as their attorney to resolve a dispute regarding pension benefits of their late mother, Kathleen Ruszkowski.  As part of his representation, Debtor filed a complaint in the District Court of Connecticut.  That complaint was dismissed after Debtor failed to respond to a motion to dismiss, failed to meet and confer with the defendant pursuant to Federal Rule of Civil Procedure 26(f), failed to appear for a pretrial conference, and failed to meet the court's deadlines.  Despite the fact that an order to show cause was entered against him, he failed to represent Plaintiffs, and

Plaintiff's complaint was dismissed.

11.     At the same time, the defendant in the federal case, the City of Stamford, filed suits against each of the Plaintiffs in their respective states of residency.  Debtor misrepresented to Plaintiffs that he was authorized to practice law in Illinois, North Carolina, and Colorado (the three states where claims were filed against Plaintiffs), when he was not licensed to practice in any of those states.  Debtor further misled Plaintiffs to believe that he had filed his appearances and was moving to consolidate the three state cases into the federal case in Connecticut.  Based solely on Debtor's misrepresentations, Plaintiffs did not appear in response to the state complaints against them.  When default judgments were entered against each of Plaintiffs, Debtor negligently told them that they did not need to appear and that he was filing an "injunction" to consolidate the state cases.  When Plaintiffs further discovered that contempt orders and arrest warrants had been issued against two of the Plaintiffs for their failure to appear at post-judgment proceedings, Debtor again told them they did not need to appear.

12.     As these cases proceeded, Debtor was in communication with Plaintiffs and had every opportunity to tell them that motions to dismiss had been filed, motions for default judgment had been filed, their federal complaint had been dismissed, default judgments had been entered against each of them, and contempt orders and arrest warrants had been issued against two of the Plaintiffs.  Debtor never disclosed any of this information, and instead kept up the façade that he was representing them in all four cases and was moving to consolidate or settle the cases with opposing counsel.  Specifically, Debtor continued to represent that he was working on the federal case months after the complaint had been dismissed.

13.     Debtor billed Plaintiffs for his fees and expenses relating to his alleged representations of them in each of these cases, even requesting fees for appearances that he never

filed and for trips he never made.

14.     Debtor's conduct directly and proximately caused:

    (a)    The federal complaint to be dismissed;

    (b)    Default judgments to be entered against each of Plaintiffs;

    (c)    Contempt Orders to be entered against each of Plaintiffs;

    (d)    Arrest warrants to be issued against two of Plaintiffs;

    (e)    Plaintiffs to pay for services that were never performed and fees that were never incurred;

    (f)    Plaintiffs to hire new counsel in an attempt to quash and vacate the contempt orders and arrest warrants, to move to set aside the default judgments, and to move to restrain a threatened sheriff auction of one of the plaintiff's houses.

15.     But for Debtor's negligent and fraudulent conduct, Plaintiffs could have pursued the dispute regarding their late mother's pension benefits in the original federal case, Plaintiffs would not have had default judgments entered against them, two Plaintiffs would not have arrest warrants issued against them; one Plaintiff would not have had her house placed for sheriff's auction; and Plaintiffs would not have had to hire and pay new counsel to vacate the default judgments and arrest warrants and to prevent the sheriff's auction of one of their houses.

16.     As a result of Debtor's conduct and/or inaction, Plaintiffs commenced an action against him in the United States District Court for the Northern District of Illinois, captioned *Ruszkowski, et al. v. Morgado*, 18-CV-5754 (Plaintiffs' "Illinois Federal Action").     The complaint in Plaintiffs' Illinois Federal Action against Debtor stated causes of action for negligence and legal malpractice.

17.     Debtor did not appear in or respond to Plaintiffs' Illinois Federal Action.

18.     On July 26, 2019, the United States District Court for the Northern District of Illinois entered a judgment against Debtor in the amount of $395,237.58 (the "Federal Judgment").

19.     The Federal Judgment has not been satisfied, in whole or in part.

## FACTUAL BACKGROUND

20.     Plaintiffs are siblings.  Their mother, Kathleen Ruszkowski, worked as a nurse for the City of Stamford.  She was a member of the City of Stamford Registered Nurses Local 465 of Council #4 and a participant in the Stamford Classified Employees' Retirement Plan.

21.     Kathleen Ruszkowski named Plaintiffs as beneficiaries to her retirement plan.

22.     After Kathleen Ruszkowski was diagnosed with lung cancer, she retired from her position as a nurse for the City of Stamford with a disability pension on September 24, 2007. Within five months of her retirement, Kathleen Ruszkowski passed away from lung cancer. After her passing, the City of Stamford made pension payments to each of the Plaintiffs.

23.     Years later, in 2016, the City of Stamford sent a letter to each of the Plaintiffs stating that the City had erroneously made extra pension payments to each of the Plaintiffs and were demanding repayment of the extra payments.

24.     In response to the City of Stamford's collection efforts, Plaintiffs engaged and hired Debtor to resolve the dispute with the City of Stamford regarding the alleged excess pension payments.

25.     Debtor was admitted to practice law in Connecticut on November 5, 2007, and was admitted to practice law in Florida on April 16, 2009, and was admitted to practice law in New York on March 11, 2014.

26.     Debtor was never licensed to practice law in Illinois, North Carolina, or Colorado.

## The Connecticut Federal Action

27.     On November 30, 2016, Debtor filed a complaint in the United States District Court for the District of Connecticut on behalf of Plaintiffs.  The Complaint sought a declaratory

judgment that all monies paid by the City of Stamford to Plaintiffs belonged to Plaintiffs free and clear of any claims or interferences by the City of Stamford.  Plaintiffs' Connecticut federal action was assigned the docket number Case No. 16-CV-01953-SRU.

28.     On March 27, 2017, the City of Stamford filed a motion to dismiss.  The response to the City's motion to dismiss was due on April 17, 2017.

29.     On March 31, 2017, the court entered an order requiring a joint status report pursuant to Federal Rule of Civil Procedure 26(f) to be filed with the court within two weeks. Debtor never conferred with counsel for the defendants and never field a joint status report.

30.     On April 17, 2017, the court set a pretrial conference for April 25, 2017.  Debtor did not appear for the April 25, 2017 pretrial conference.  That same day, the court entered an order to show cause, stating that:  (i) Plaintiffs' counsel failed to appear for the Federal Rule of Civil Procedure 16 pretrial conference; (ii) Plaintiffs' counsel failed to confer with opposing counsel regarding the Federal Rule of Civil Procedure 26(f) status report; and (iii) Plaintiffs' counsel failed to serve all defendants within ninety days of the complaint being filed.

31.     One month later, Debtor filed a response to the Order to Show Cause, citing his unexpected poor health as the reason for his failing to meet court deadlines and advance the case.

32.     Instead of informing his clients that an order to show cause had been entered or that he needed to file a response, Debtor left his clients in the dark. Debtor sent the message below on the same day he filed the response to the order to show cause:

| May 25, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 1): <br><br> "Should we have an update call?  It sounded like there are things we need to discuss.  I have no idea what is going on. <br><br> Debtor responded: <br><br> "We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on.  I did put together an online booking site so you find a time that works for you and schedule a time to confer as you wish…." |
|---|---|

33.     On July 27, 2017, the Board of Trustees of the Classified Employees Retirement Fund filed a motion to dismiss the complaint.  The response to the motion to dismiss was due on August 17, 2017. Debtor never filed a response to this motion to dismiss and never filed a request for an extension.

34.     On September 1, 2017, the Court entered an order stating that the Board of Trustees' motion to dismiss would be granted unless Plaintiffs responded by September 8, 2017. September 8, 2017, came and went, and Debtor did not file a response to the motion to dismiss.

35.     On September 12, 2017, the Court entered an order granting the Board of Trustees' motion to dismiss. Seven days later, the Court entered another order granting the City of Stamford's motion to dismiss and closing the case.

36.     During this time period, between November 30, 2016 and September 12, 2017, Debtor was in communication with Plaintiffs via email and phone calls.  Nevertheless, Debtor did not disclose that an order to show cause had been filed in this case based on his failure to meet deadlines set by the Court and the Federal Rules of Civil Procedure.  Debtor did not disclose that he had failed to file a response to a motion to dismiss.  Debtor did not disclose that the case had been dismissed.  Debtor never stated that he was having health issues and,

conversely, Debtor continued to bill Plaintiffs for his alleged services.

37.     Plaintiffs had evidence that would have allowed them to prevail on their declaratory judgment claim.  But for Debtor's conduct, Plaintiffs would have responded to the motions to dismiss and/or amended the complaint that Debtor drafted and prevailed on their claim for declaratory judgment.

## The State Cases

38.     Shortly after Plaintiffs filed their declaratory judgment action in the District Court, the City of Stamford and the Board of Trustees of the Classified Employees Retirement Fund filed a complaint against each of the Plaintiffs in their respective states of residency.

39.     On December 13, 2016, the City of Stamford and the Board of Trustees of the Classified Employees Retirement Fund filed suit against Mr. Ruszkowski in the Circuit Court of Cook County, Illinois.

40.     On January 3, 2017, the City of Stamford, Classified Employee Retirement Fund filed suit against Dr. Griffith in the General Court of Justice, Superior Court Division in North Carolina.

41.     On January 12, 2017, the City of Stamford filed suit against Ms. King in the District Court, City and County of Denver, Colorado.

42.     In each of the "State Cases," the City of Stamford sought to recoup the allegedly extra pension payments made to the Plaintiffs, which they said were made by the City erroneously and by accident.

43.     After receiving service of the State Cases, Plaintiffs promptly notified Debtor that they had been sued and served in their respective states of residency.  For example, Mr. Ruszkowski was not served with notice of the underlying complaint until February 7, 2017.  He

contacted Debtor the next day to let him know that he had been served.

44.     In their conversations with Debtor after Plaintiffs received notice of the State Cases, Debtor explained that he would represent them in the State Cases and move to consolidate the three State Cases into the federal action that was already proceeding in the District Court of Connecticut.

45.     Debtor never told any of the Plaintiffs that he was not licensed to practice law in Illinois, North Carolina, or Colorado.

46.     Debtor never suggested to or informed Plaintiffs that they needed to hire local counsel.

47.     Instead, Debtor explicitly stated that he would be filing appearances on behalf of each of Plaintiffs in the State Cases.

48.     Despite the fact that he never filed his appearance in any of the State Cases, Debtor represented to Mr. Ruszkowski that he would need $250 per case to appear in each of the state actions.

| March 28, 2017 | Email from Debtor to Mr. Ruszkowski (Exhibit 2) <br><br> "Here is the wiring information to send the $750 ($250 x 3) to permit and pay for me to appear in your three other cases.  Can you kindly wire that today? Thanks Rob. – DJM" |
|---|---|

49.     Debtor wrote later on March 28, 2017, to confirm the amount owed for him to file appearances in each of the State Cases:  "Okay, it is the same fee across the board per case, regardless of the state, i.e., $250 per case, so $750 altogether."  March 28, 2017 email, attached hereto as Exhibit 3.

50.     The Plaintiffs paid $750 to Debtor to file his appearances in each of the State Cases.  Debtor received the money, but never filed his appearances.

51.    In reliance upon Debtor's representation that he would be consolidating the State Cases into the federal case and that they did not need to respond or appear in the State Cases, none of the Plaintiffs appeared in response to the respective complaints.

52.    Mr. Ruszkowski, on behalf of Plaintiffs, followed up with Debtor several times to determine if Debtor had consolidated the State Cases into the federal action:

| February 21, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 4) "Also, did we ever hear back definitively about consolidating the cases from the NC, CO, and IL attorneys?" |
|---|---|
| March 10, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 5) "As an update, have the individual summons/cases against Dana, Jill, and me been successfully consolidated into the other case?" |

53.    Debtor did not respond to these emails and requests for information.

54.    Because Debtor failed to file an appearance, hire local counsel, or respond to the State Case complaints, motions for default judgment were filed in each of the State Cases against each of the Plaintiffs.

55.    Debtor never told any of the Plaintiffs that a motion for default judgment had been filed against them.

56.    Debtor never responded to the motions for default judgment on behalf of any of the Plaintiffs.

57.    Instead, Debtor continued to represent the fact that he was consolidating the State Cases into the federal case.

58.    In response to Debtor's request for payment of the $750 appearance filing fee, Mr. Ruszkowski asked:

| March 28, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 3) (emphasis added) |
| --- | --- |
| | "My only question is around the reference to appearing in the three other states. **Does that mean the individual cases against us are not yet consolidated into the single case?** If so, do we need to do anything about that now?" |
| | Debtor responded: |
| | "to answer your question no they are not yet consolidated, that is what I intend to do today, as in right now, I was literally looking up the fees per court to accomplish this task so I can send you the itemized costs and have you wire it over. . . . In either scenario with their cooperation or not, today is a good day to do it and all part of my tractor trailer[sic] down the highway strategy. I'll finish adding up the court fees and email you right back." |

59.     Default Judgments were entered in each of the State Cases against Plaintiffs because Debtor failed to file an appearance, failed to hire local counsel, failed to respond to the Complaints, and failed to respond to the motions for default judgment.

60.     Debtor further did not tell any of his clients that default judgments had been entered against them.  For example, an email chain three days after the default judgment was entered against Mr. Ruszkowski mentions nothing about the default judgment.  *See* April 28, 2017 Email, attached hereto as Exhibit 6.  And, the aforementioned email chain, in which Mr. Ruszkowski asks for a case update and Debtor states: "We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on" is a month after the default judgment was entered," was sent one month after the default judgment was entered against Mr. Ruszkowski.  May 25, 2017 Email, attached hereto as Exhibit 7.

61.     When the default judgments were entered, Plaintiffs were all under the impression

that Debtor had filed his appearance, was representing them in the underlying actions, and was working to consolidate the cases.

62.    After the default judgments were entered, Mr. Ruszkowski and Ms. King received citations to discover assets as part of the post-judgment proceedings.

63.    Mr. Ruszkowski again promptly notified Debtor, who responded by telling Mr. Ruszkowski not to worry about it and that he would file a motion to handle the issue:

| July 2, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 8) <br><br> "I actually got my own papers this morning (and on a Sunday). I have uploaded them to the portal. The file name is Scan2017 2-7 something or other. It is called "Citation to Discover Assets" and other papers. I've also attached it here. This does seem to be getting a little ridiculous that this keeps happening when supposedly it shouldn't be. Let me know what I need to do. Please also let us know what you plan to do and what the results end up being. This of course make us a little anxious." |
|---|---|
| July 3, 2017 | Email from Debtor to Mr. Ruszkowski (Exhibit 8) <br><br> "Thanks Rob. I'll break down the steps for you that make up the plan in the next two days. In short, however, we will be filings a motion concerning what you attached this week though. I'll send you a copy for that too for you[r][sic] files." |
| July 5, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 8) <br><br> "Thanks again Dale for jumping on this. Just wondering if there is an update yet." |

| | |
|---|---|
| July 6, 2017 | Email from Debtor to Mr. Ruszkowski (<u>Exhibit 9</u>)<br><br>"Responding to your email from yesterday afternoon, I haven't posted an update yet just waiting for the clerk to respond to confirm.  I will check it soon as I get back to my office and out of this traffic.  And I will follow up with you later tonight after dinner time." |
| July 7, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 9)<br><br>"Just out of curiosity, what is the clerk going to discuss with you?  Am I going to have to appear at the court date indicated on the papers I received?" |
| July 9, 2017 | Email from Mr. Ruszkowski to Debtor (<u>Exhibit 10</u>)<br><br>"I am getting nervous about this upcoming court appearance required in the papers I received.  I need to know if I will actually need to go to it so I can make appropriate arrangements.  Please let me know." |
| July 11, 2017 | Email from Mr. Ruszkowski to Debtor (<u>Exhibit 11</u>) (emphasis added)<br><br>"I am getting very nervous about the status of our case and the papers I received.  I don't know what is going on and whether I need to appear in court in a couple of weeks.  Please call me at 312.860-5661."<br><br>Debtor responded:<br><br>"That is something they send out automatically.  **You won't be attending or need to go.  Don't be nervous.**  I'll call you after my deposition today."<br><br>Mr. Ruszkowski responded:<br><br>"Thanks for the reassurance Dale.  Let me know when you expect to call so I can make sure I don't miss it." |

64.    In reliance upon Debtor's legal advice that Mr. Ruszkowski did not need to appear, Mr. Ruszkowski did not appear in response to the citation to discover assets.  After this

exchange, Mr. Ruszkowski repeatedly requested to discuss the status of the State Cases with Debtor.  Mr. Ruszkowski specifically requested to see documentation that none of the Plaintiffs needed to appear.

| July 12, 2017 | Email from Mr. Ruszkowski to Debtor (<u>Exhibit 12</u>)<br><br>"Are you able to talk quickly today?" |
|---|---|
| July 13, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 12)<br><br>"I'd really like to discuss this issue quickly.  You mentioned you would provide documentation that this has been resolved, but we haven't seen anything yet.  Let me know." |
| July 14, 2017 | Email from Mr. Ruszkowski to Debtor (<u>Exhibit 13</u>)<br><br>"I don't get it, am I that unimportant?  We have been receiving very threatening letters and the only thing we have heard from you is 'don't worry about it.'  You promise that we will see documentation that it is resolved and nothing materializes.  My letter literally says I can be arrested if I don't show up in court.  How can you realistically expect me to ignore that based on what you have given me?  I really need to talk to you about this.  I have an incredibly high level of stress that is exacerbated by the fact that you are ignoring me.  Please let me know when you can talk and let's talk then." |

65.    In response to this last email, Debtor alleged that "the clerk" (although it is unclear whether he was referring to the clerk in federal court or in Mr. Ruszkowski's state court case) was delaying progress:

| July 18, 2017 | Email from Debtor to Mr. Ruszkowski (<u>Exhibit 14</u>):<br><br>"The clerk is taking too long for my liking and I know you are anxious about progressing the state cases to a close so when I get out of court today I plan, if my research bears out the way I believe it will to prepare a temporary injunction to be filed with the federal court. The point of this will be to cease and stop any and all state court actions.  I believe this will give you the relief you seek.  How's everything else going with you and your family?"<br><br>Mr. Ruszkowski responded:<br><br>"Thanks for the email and yes, a temporary injunction sound like a very good solution and will provide the relief we are seeking.  We are not usually involved in these kinds of things so any threatening-sounding document tends to set off alarms for us.  What were you trying to get from the clerk?  Was it something else?<br><br>Please let me know when you have a draft of the temporary injunction and how it works to get it implemented." |
|---|---|

66.    Debtor never explained what he was waiting for from "the clerk," never sent Mr. Ruszkowski an injunction, and never filed an injunction or any motion to consolidate the cases.

67.    Despite the fact that he was not going to and did not file any sort of injunction, Debtor continued to make misleading statements to Mr. Ruszkowski:

| July 21, 2017 | Email from Debtor to Mr. Ruszkowski (Exhibit 15)<br><br>"Less[sic] you think I forgot about you, I did not.  I am making a few final edits, as is my normal process.  I can't submit something subpar (there's the control freak in me), plus in the evening … after the children are in bed, along with early morning… before aware, and before the phone calls begin and emails start flying etc. …. Well that is the best time research and write)[sic]."<br><br>Mr. Ruszkowski responded:<br><br>"Appreciate the heads up.  Let me know if I can help." |
|---|---|
| July 23, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 16)<br><br>"Am I able to see a draft of the injunction even if it is not filed yet?  As we discussed, I still have anxiety over this." |
| July 24, 2017 | Email from Debtor to Mr. Ruszkowski (Exhibit 15)<br><br>"…and while the motion is good, I do have some other things that you can help out on."<br><br>Mr. Ruszkowski responded:<br><br>"Great, can you send me the motion? Is it filed?" |
| July 24, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 16)<br><br>"I am feeling sick with anxiety.  What is the status of this?  Has the injunction been filed? If so, please send it to me.  This has gone on way to[o] long and I need to get this put to bed. Please call me asap." |

68.    In email correspondence the next day, Debtor explained that he had continued the July 27 hearing date in Mr. Ruszkowski's Illinois state case.  It is unclear how Debtor could have continued this case without filing an appearance on behalf of Mr. Ruszkowski or being licensed to practice in Illinois.  It appears that Debtor may have contacted counsel for the City of

Stamford and requested the continuance without any appearance being filed.

| July 25, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 17)<br><br>"Let me know what you need my help on and please do send the injunction ASAP. You said you would send that as soon as it was done."<br><br>Debtor responded:<br><br>"I have some excellent news for you. The July 27, 2017 scheduled event for you has been officially put off. I told you not to worry."<br><br>Mr. Ruszkowski replied:<br><br>"That is great news Dale, I am certainly very happy to hear about that. I would be interested in some of the details, such as what was the cause of the delay (was it the injunction, something else), will it happen in the future, what is the status of Dana's and Jill's situations, etc.?<br><br>Hopefully the injunction has been put into place and will protect all of us from any action at the state level, but let me know whether that is true or not." |
|---|---|
| July 25, 2017 | Email from Debtor to Mr. Ruszkowski (Exhibit 18)<br><br>"Rob, I am glad I was able to get the 7/27/17 examination putoff[sic] for you. Now that the immediate issue has been resolved, I finally got around to billing at least February. Accordingly, I was wondering if you could send a wire in for February's bill. Thanks so much. I look forward to catching up with you this week so I can answer any additional questions you might have." |

69.     Debtor's conduct was not limited to Mr. Ruszkowski's State Case. Debtor's conduct of not responding to Plaintiffs' questions, providing misleading information, and failing to actually represent his clients in the State Cases affected each of the Plaintiffs.

70.     Dr. Griffith became so frustrated with the lack of communication and the lack of

resolution that she filed a motion for a continuance herself.

71.   Eventually, contempt orders and arrest warrants were issued against Mr. Ruszkowski and Ms. King.

72.   Debtor did not disclose that arrest warrants had been issued against these two plaintiffs.  Instead, Ms. King learned about it when she called the court on another matter.

| November 15, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 19)<br><br>"Jill said the court told her there is an arrest warrant out for her?  What is going on?<br>Am I in the same boat?  We all assume you are taking care of things on our behalf and the difficulty in getting in touch with you is to manage legal costs.  I think it is fair to say that we all need a comprehensive update immediately.  When can we do this?" |
| --- | --- |
| November 20, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 20)<br><br>"Please let me know if there is a time in the near future we can catch up.  Jill contacted the court on another matter (her divorce) and they told her there was an arrest warrant outstanding for her associated with this case.  They said she can be taken to jail if she is pulled over for a traffic stop, etc.  We really need to figure out what is going on ASAP." |
| November 21, 2017 | Email from Mr. Ruszkowski to Debtor (Exhibit 20)<br><br>"Please let me know if there is time for a call.  It would really be good to do this before thanksgiving." |

73.   When Debtor finally responded, he misleadingly stated that he was in communications with opposing counsel regarding settling the federal case, *even though that case had been dismissed two months before*:

| November 23, 2017 | Email from Debtor to Mr. Ruszkowski (<u>Exhibit 21</u>) |
|---|---|
| | "Good afternoon Robert, and A Happy Thanksgiving to you and your family.  I'm sorry we didn't get to touch base last week, but I spoke with opposing counsel and they informed me they are recommending that their client give more consideration to settling the case, and that they are recommending an increase in settlement monies from the level we discussed.  However, I don't' know how much of an increase … so the devil will be in the details.  Hopefully opposing counsel will hear from their client soon and they can pass on their formal offer." |

74.     The impetus for the contempt orders and arrest warrants was Plaintiffs' failure to appear or respond in the post-judgment proceedings.  Plaintiffs' failure to appear in the post-judgment proceedings was solely caused by Debtor's continued representations that Plaintiffs did not need to appear and that he was resolving their cases.

75.     This course of conduct—Debtor not responding to Plaintiffs' questions, providing misleading information, and failing to actually represent Plaintiffs in the State Cases—continued, even after arrest warrants had been issued against the Mr. Ruszkowski and Ms. King.

76.     After Ms. King found out that an arrest warrant had been issued for her by calling the court on another case, she repeatedly expressed her concern over having an arrest warrant issued against her and needing to have it resolved as soon as possible.  Debtor responded that having a warrant out for her arrest while traveling, "it will not be an issue."  He further falsely stated that he was representing her in the Colorado case and that he had already raised the issue of her arrest warrant:  "I know I have a hearing coming up in your case soon.  In an abundance of caution, I would raise the issue again."  January 24, 2018 Email from Debtor to King, attached hereto as <u>Exhibit 23</u>.  Debtor had never appeared in this case and certainly did not appear for a hearing and raise any objection to the arrest warrant.

| January 11, 2018 | Email from King to Debtor (Exhibit 22)<br><br>"Hi Dale – can we please try to reschedule this call asap ... and also I am really panicked about the arrest warrant situation." |
| --- | --- |
| January 17, 2018 | Email from King to Debtor (Exhibit 22)<br><br>"Hi Dale – want to check back on this.  Has become more urgent because my job wants me to travel again next month, and I don't know if I can get through airport security with an arrest warrant outstanding." |
| January 24, 2018 | Email from Debtor to King (Exhibit 23)<br><br>"Come to think of it ... it is probably for the best we talk tomorrow though ... I am tired for one ... but more importantly, I want to be able to properly confer with you, have your case file in front of me etc... I want to be able to go over the various court filings with you etc... and give you to a reasonable time in the day so you can review and ask any questions you might have, without feeling rushed or nodding off to sleep.  Plus, if I'm at my office, as opposed to my car or court, I can always quickly fire up a screen sharing session where we can go over and interact with the documents live etc. ...<br><br>But to answer your most pressing question about travel; it will not be an issue. In fact, I know I have a hearing coming up in your case soon. In an abundance of caution, I would raise the issue again ... you can be present ... and I'll then move the court (judge) for an ore tenus order stating your[sic] are under no travel restriction and that no warrant is in effect etc. ... That way you have clarity and peace of mind." |

77.     The deception continued when Debtor emailed Ms. King the next day, stating:  "I just hung up with Judicial Assistant," apparently referring the judge in Colorado's assistant and stating that he had moved the date of her hearing and needed money to book his plane flight to Colorado to attend that hearing.  January 26, 2018 Email, attached hereto as Exhibit 24.

78.     Debtor requested and was paid money for a trip he never took to represent Ms. King at a hearing that was not scheduled.  When Ms. King requested to pay for the plane ticket directly with a credit card, Debtor ignored her request for days until Ms. King thought it was getting too late to purchase the tickets and had funds wired to Debtor instead.  January 2018 Emails, attached hereto as Exhibit 25.  No one, except for Debtor, knows what was done with these funds, as he did not purchase a plane ticket to attend a hearing on behalf of Ms. King.

79.     Based on Debtor's representations, Ms. King believed that he was working to resolve the arrest warrant in early 2018.

80.     Months later, Ms. King called the court to determine if the arrest warrant had been vacated or quashed and when she found it had not been resolved, she immediately expressed her surprise and concern to Debtor:

| April 25, 2018 | Email from King to Debtor (Exhibit 26)<br><br>"I've just called the Denver County courthouse to check on the status of the arrest warrant.  They have told me that it is still outstanding.  What can we do about this, asap?  I am traveling for work in a couple of weeks and I am very nervous about going through airport security.  This is the first time that I will have traveled since the warrant was issued, and I cannot postpone this trip anymore." |
|---|---|

81.     Despite the fact that Ms. King sent this urgent email to two email addresses for Debtor, he never responded.

82.     Debtor continued to not respond to Plaintiffs' inquiries and concerns until Plaintiffs learned on May 3, 2018, that Debtor's New York law license had been suspended.

83.     Upon learning this information, Plaintiffs diligently contacted new counsel. Attorneys from Actuate Law, LLC, discovered that arrest warrants had also been issued for Mr.

Ruszkowski. They then filed emergency motions to quash and vacate the arrest warrants and petitions to set aside the default judgments.

### The Illinois Federal Action

84. The Illinois Federal Action was commenced on or about August 22, 2019, and Debtor was served with a summons and copy of the complaint.

85. Debtor did not appear in the Illinois Federal Action, and a default was entered against him on January 14, 2019.

86. Subsequently, Plaintiffs received permission to file a motion for default judgment against Debtor, which motion was filed on May 31, 2019.

87. The Court held a prove up hearing on July 23, 2019 and, the same day, entered the Federal Judgment in the amount of $395,237.58 against Debtor, consisting of actual damages in the amount of $365,237.58, and emotional damages of $30,000.00. The Federal Judgment is attached hereto as Exhibit 27.

### AS AND FOR A FIRST CAUSE OF ACTION

88. Plaintiffs fully restate and reallege paragraphs 1 through 87 of this Complaint as if fully restated herein.

89. Debtor affirmatively represented to Plaintiffs that he was representing their interests as their attorney in the Connecticut federal action and in each of the State Actions, and that he was providing Plaintiffs with legal services in connection with same.

90. Debtor knew or had reason to know that each such representation was false, and Debtor made and intended each such representation to induce Plaintiffs' reliance thereon.

91. Plaintiffs relied upon Debtor's representations to their detriment, including without limitation by incurring the following damages, which were awarded by the Court as part of the Federal Judgment:

(a)    Actual damages for the default judgments entered against the Plaintiffs in each of the state actions, totaling $82,594.01;

(b)    Actual damages for legal fees paid to Debtor totaling $29,643.72;

(c)    Actual damages totaling $209,790.69 for legal fees incurred by Plaintiffs in: (i) *City of Stamford, Connecticut, The Board of Trustees of the Classified Employees Retirement Fund v. Robert Ruszkowski, Jr.*, Case No. 16 M2 004590 in the Circuit Court of Cook County, Illinois, Municipal Department, Second District; (ii) *City of Stamford v. Jill King*, Case No. 2017-CV-30156 in the District Court, Denver County, Colorado; (iii) *City of Stamford v. Dana Griffith*, Case No. 17 CVS 000010 in the General Court of Justice Superior Court Division in North Carolina; and (iv) *Ruszkowski et al. v. Stamford et al.*, Case No. 16-CV-01953-SRU in the District Court of Connecticut;

(d)    Actual damages for legal fees incurred by Plaintiffs in the Illinois Federal Action totaling $43,209.16;

(e)    Emotional damages in the amount of $30,000.00 awarded by the Court in the Illinois Federal Action

92.    Plaintiffs have incurred additional damages since the Federal Judgment was entered on July 26, 2019.

93.    Plaintiffs' damages are the result of Debtor's knowing and fraudulent receipt and attempt to receive money from Plaintiffs, and the result of Debtor's requiring Plaintiffs to act or to forbear from acting during the course of Debtor's legal representation of Plaintiffs.

94.    Plaintiffs' damages are a non-dischargeable debt under 11 U.S.C. § 727(a)(4).

**AS AND FOR A SECOND CAUSE OF ACTION**

95.    Plaintiffs fully restate and reallege paragraphs 1 through 94 of this Complaint as if fully restated herein.

96.    Plaintiffs are entitled to recover interest at the maximum amount permitted by law from the date of the Federal Judgment until the collection of judgment in this adversary proceeding.

**WHEREFORE,** Plaintiffs requests the entry of a judgment against Defendant-Debtor Dale Morgado as follows:

(a)    Denying Defendant-Debtor Dale Morgado's discharge pursuant to 11 U.S.C. § 727(a)(4);

(b)    Awarding Plaintiffs pre-judgment interest and costs;

(c)    Awarding Plaintiffs reasonable attorneys' fees and costs; and

(d)    Such further and different relief as this Court deems just and proper.

Dated: Greenwich, Connecticut          IVEY, BARNUM & O'MARA, LLC
       December 23, 2019


                                       By:    */s/ Ryan S. Tougias*
                                       Michael J. Jones, Esq. (ct09759)
                                       Ryan S. Tougias, Esq. (ct28830)
                                       170 Mason Street
                                       Greenwich, Connecticut 06830
                                       Telephone: (203) 661-6000
                                       Email: mjones@ibolaw.com
                                              rtougias@ibolaw.com

                                       *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2019, a copy of the foregoing was filed electronically and served by U.S. mail, first class postage prepaid on any party unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Ryan S. Tougias*
Ryan S. Tougias, Esq. (ct28830)