**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT (BRIDGEPORT)**

------------------------------------------------------------X        Chapter 7

In re:
                                                                                     Case No.:19-51232

      DALE MORGADO,

                    Debtor.

------------------------------------------------------------X

      ROBERT LEE RUSZKOWSKI, JR.,
      DANA RENEE GRIFFITH and
      JILL KATHLEEN KING,

                    Plaintiffs,
                                                                                     Adv. Pro. No.: 19-05036

        -against-

      DALE MORGADO,

                    Defendant-Debtor.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**IVEY, BARNUM & O'MARA, LLC**
*Attorneys for Plaintiffs*
170 Mason Street
Greenwich, Connecticut 06830
Telephone: (203)661-6000
Email: mjones@ibolaw.com
        rtougias@ibolaw.com

**COUNSEL:**
Michael J. Jones, Esq.(ct09759)
Ryan S. Tougias, Esq. (ct28830)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.   PROCEDURAL HISTORY ............................................................................ 1

II.  STATEMENT OF FACTS ............................................................................ 2

III. ARGUMENT ............................................................................................... 16

    A. Standard of Review. ............................................................................ 16

    B. There Is No Genuine Dispute As To Any Material Facts Because All Facts Alleged

    In The Amended Complaint And The Incorporated Exhibits Are Deemed Admitted As

    True. ....................................................................................................... 17

    C. Plaintiffs Are Entitled To Summary Judgment That The Debt Is  Nondischargeable

    Under 11 U.S.C. § 523(a)(2)(A). ......................................................... 17

    D. Plaintiffs Are Entitled To Summary Judgment That ........................... 27

    The Debt Is Nondischargeable Under 11 U.S.C. § 523(a)(4). .............. 27

    E. Plaintiffs Are Entitled To Summary Judgment That The Attorneys' Fees Awarded By

    The Court In The Illinois Action Are Nondischargeable. ..................... 30

IV.  CONCLUSION ............................................................................................ 30

# **TABLE OF AUTHORITIES**

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)................................................... 16

*Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, (1998) .. 27, 28

*Bullock v. Bank of Champaign, N.A.*, 569 U.S. 267, 268 (2013)........................................... 28, 29

*Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) .......................................................................... 18

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016) ...................................................... 18

*In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246 (Bankr. D. Conn. 2013) ......................... 16

*In re Cardin*, No. 11–52077, 2013 WL 1092118 (Bankr. E.D. Tenn. Jan. 31, 2013) ................. 30

*In re Hall*, 483 B.R. at 294..................................................................................................... 28

*In re Hayes*, 183 F.3d 162, 166 (2d Cir. 1999) ........................................................................... 27

*In re Massie*, No. 14-50579 (JAM), 2018 WL 3218847, (Bankr. D. Conn. June 29, 2018) ........ 18

*In re Mulligan*, 763 F. App'x 70, 74 (2d Cir.) ...................................................................... 28, 29

*In re Rossman*, No. 17-51160, 2019 WL 3330781, (Bankr. D. Conn. July 24, 2019) ................. 18

*In re Snyder*, 939 F.3d 92, 102 (2d Cir. 2019)............................................................................ 27

*In re Thompson*, 511 B.R. 33 .................................................................................................. 30

*Johnson v. Bank of America*, N.A., Docket No. X04-HHD-CV15-6066060-S, 2016 WL 7974180

............................................................................................................................................. 27

*Kalra v. Adler Pollock & Sheehan P.C.*, No. 3:18-CV-260 (KAD), 2019 WL 319397, at *4 (D.

Conn. Jan. 24, 2019) ............................................................................................................. 28

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018) .................................... 17

*Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 351 (S.D.N.Y. 2011) ................ 17

*Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20 (Bankr. D. Conn. 2014)... 16

*Mulligan v. Jalbert*, No. 3:17-CV-01873 (JAM), 2018 WL 7506431, (D. Conn. May 3, 2018) . 29

*United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009)........... 16

*Village Mtg. Co. v. Veneziano (In re Veneziano)*, 2020 WL 1503233, (Bankr. D. Conn. Mar. 27, 2020) .......................................................................................................................................... 16

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ..................................................................... 16

Statutes

11 U.S.C. § 523 ...................................................................................... 17, 18, 27, 28, 29, 30, 31

Federal Rules of Civil Procedure

Rule 8 ............................................................................................................................................ 17

Rule 12 ................................................................................................................................. 1, 2, 17

Rule 15 ...................................................................................................................................... 1, 17

Rule 55 ............................................................................................................................................ 2

Rule 56 ................................................................................................................................. 1, 2, 16

Federal Rules of Bankruptcy Procedure

Rule 7001 ......................................................................................................................................... 1

Rule 7012 ......................................................................................................................................... 1

Rule 7015 ................................................................................................................................... 1, 17

Rule 7055 ......................................................................................................................................... 2

Rule 7056 ................................................................................................................................ 1, 2, 16

District of Connecticut Local Rules of Bankruptcy Procedure

Rule 56(a)(1) .................................................................................................................................... 2

Rule 7056-1 ...................................................................................................................................... 1

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), Rule 7056-1 of the District of Connecticut Local Rules of Bankruptcy Procedure ("D. Conn. L. R."), and Rule 56(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiffs Robert Lee Ruszkowski, Jr. ("Mr. Ruszkowski"), Dana Renee Griffith ("Dr. Griffith") and Jill Kathleen King ("Ms. King") (collectively, "Plaintiffs"), by and through their attorneys, Ivey, Barnum & O'Mara, LLC, respectfully submit this Memorandum of Law in support of their Motion ("Motion") seeking an Order granting summary judgment in their favor as to every count contained in Plaintiffs' Amended Complaint to Object to Discharge of Debtor dated March 2, 2020 ("Complaint").

## I.   **PROCEDURAL HISTORY**

Plaintiffs commenced this adversary proceeding pursuant to Rule 7001 of the Fed. R. Bankr. P. to object to the discharge of the Debtor under 11 U.S.C. § 523(a) by the filing of a Complaint on December 23, 2019. **(Doc. 1.)** Debtor, a disbarred attorney, filed a Notice of Appearance, *pro se*, and a Motion for an Extension of Time to respond to Plaintiffs' Complaint on February 12, 2020 **(Docs. 5-6.)** Thereafter, Debtor filed a motion ("Debtor's Motion") pursuant to Rule 7012 of the Fed. R. Bankr. P. and Rule 12(b)(6) of the Fed. R. Civ. P. to dismiss Plaintiffs' Complaint or, alternatively, pursuant to Rule 12(e) of the Fed. R. Civ. P., for a more definite statement, together with a Memorandum of Law in Support thereof. **(Docs. 7-8.)**

The Court noticed a hearing on Debtor's Motion for March 10, 2020, which notice was duly served upon Debtor by the Office of the Clerk. **(Docs. 10-12.)** On March 3, 2020, Plaintiffs filed a Memorandum of Law in Opposition to Debtor's Motion, along with an Amended Complaint pursuant to Rule 7015 of the Fed. R. Bank. P. and Rule 15(a)(1)(A) of the Fed. R. Civ. P. **(Docs. 15-16.)** Debtor did not file a reply memorandum in further support of Debtor's Motion, nor did

Debtor appear at the hearing held on March 10, 2020.

During the hearing on Debtor's Motion, the Court noted for the record that Debtor had been duly served with a copy of the Court's Notice of Hearing, and that Debtor had failed to appear. The Court then denied Debtor's Motion, and granted permission to Plaintiffs either to move pursuant to Rule 7055 of the Fed. R. Bankr. P. and Rule 55 of the Fed. R. Civ. P. for a default judgment, or pursuant to Rule 7056 of the Fed. R. Bankr. P. and Rule 56 of the Fed. R. Civ. P. for summary judgment if Debtor failed to respond to Plaintiff's Amended Complaint in the time permitted by law. On March 11, 2020, the Court issued an Order Denying Relief After Hearing for the reason stated by the Court on the record on March 10, 2020. **(Doc. 20.)**

Debtor failed to file a response to Plaintiffs' Amended Complaint on or before March 23, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). As of the date of Plaintiffs' present Motion, Debtor has not responded to Plaintiffs' Amended Complaint.

## II.     <u>STATEMENT OF FACTS</u>

Plaintiffs Mr. Ruszkowski, Dr. Griffith, and Ms. King are siblings. (Local Bankruptcy Rule 7056-1 and District of Connecticut Local Civil Rule 56(a)(1) Statement of Undisputed Facts ("SUF") ¶ 1.) Plaintiffs' mother, Kathleen Ruszkowski, was a member of the City of Stamford Registered Nurses Local 465 of Council #4 and a participant in the Stamford Classified Employees' Retirement Plan. (SUF ¶ 2.) After Kathleen Ruszkowski passed away from lung cancer, the City of Stamford made pension payments to each of the Plaintiffs as her beneficiaries. (SUF ¶ 3.)

<u>The Connecticut Federal Action</u>

In 2016, the City of Stamford (the "City") sent a letter to each of the Plaintiffs stating that the City had erroneously made extra pension payments to each of the Plaintiffs and that the City

was demanding repayment of said extra payments. (SUF ¶ 4.) In response to the City's collection efforts, Plaintiffs engaged and hired Debtor Dale James Morgado ("Debtor") as their lawyer, to resolve the dispute with the City regarding the alleged excess pension payments. (SUF ¶ 5.) The original engagement letter between Debtor and Plaintiffs for legal services is dated October 6, 2016, a true and correct copy of which is attached to the accompanying Declaration of Robert Ruszkowski, Jr. dated November 18, 2021 ("Ruszkowski Decl.") as Exhibit 1.

Debtor was admitted to practice law in Connecticut on November 5, 2007. (SUF ¶ 6.) Debtor was admitted to practice law in Florida on April 16, 2009. (SUF ¶ 6.) Debtor was admitted to practice law in New York on March 11, 2014. (SUF ¶ 6.) Debtor was never licensed to practice law in Illinois. (SUF ¶ 7.) Debtor was never licensed to practice law in North Carolina. (SUF ¶ 7.) Debtor was never licensed to practice law in Colorado. (SUF ¶ 7.)

On November 30, 2016, Debtor filed a complaint in the United States District Court for the District of Connecticut on behalf of Plaintiffs, Case No. 16-CV-01953-SRU (the "Connecticut Federal Action"). (SUF ¶ 8.) Debtor failed to prosecute the Connecticut Federal Action on Plaintiffs' behalf. Specifically, on April 17, 2017, the District Court entered an order to show cause, stating that: (i) Plaintiffs' counsel failed to appear for the Federal Rules of Civil Procedure Rule 16 pretrial conference; (ii) Plaintiffs' counsel failed to confer with opposing counsel regarding the Federal Rules of Civil Procedure Rule 26(f) status report; and (iii) Plaintiffs' counsel failed to serve all defendants within ninety days of the complaint being filed. (SUF ¶ 9.) Instead of informing Plaintiffs that an order to show cause had been entered or that he needed to file a response, Debtor never informed Plaintiffs that an order to show cause had been entered. (SUF ¶ 10.)

On May 25, 2017, Debtor responded to an email from Mr. Ruszkowski requesting a case

update. (SUF ¶ 12.) Debtor's May 25, 2017, email was sent the same day that Debtor filed a

response to the order to show cause. (Case No. 16-CV-01953-SRU, D.C. Conn., Doc. No. 22.)

| May 25, 2017 | Email from Mr. Ruszkowski to Debtor: "Should we have an update call? It sounded like there are things we need to discuss. I have no idea what is going on." (SUF ¶ 11.) Debtor responded: "We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on. I did put together an online booking site so you find a time that works for you and schedule a time to confer as you wish…." (SUF ¶ 12.) |
| --- | --- |

Both the City and the Board of Trustees of the Classified Employees Retirement Fund filed

motions to dismiss the complaint in the Connecticut Federal Action. (SUF ¶¶ 13-16.) On

September 1, 2017, the District Court entered an order stating that the Board of Trustees' motion

to dismiss would be granted unless Plaintiffs responded by September 8, 2017. (SUF ¶ 13.) Debtor

never filed a response to the Board of Trustees' motion to dismiss and never filed a request for an

extension. (SUF ¶ 14.) On September 12, 2017, the District Court entered an order granting the

Board of Trustees' motion to dismiss. (SUF ¶ 15.) On September 19, 2017, the District Court

entered another Order granting the City of Stamford's motion to dismiss and closing the case.

(SUF ¶ 16.) The Connecticut Federal Action was dismissed as of September 19, 2017. (SUF ¶ 16

and Case No16-CV-01953-SRU, D.C. Conn., Doc. No. 35.)

Between November 30, 2016, and September 12, 2017, Debtor was in communication

with Plaintiffs via email and phone calls. (SUF ¶ 17.) Between November 30, 2016, and September

12, 2017, Debtor did not disclose that an order to show cause had been filed in this case based on

his failure to meet deadlines set by the Court and the Federal Rules of Civil Procedure. (SUF ¶

4

18.) Between November 30, 2016, and September 12, 2017, Debtor did not disclose that he had failed to file a response to a motion to dismiss. (SUF ¶ 19.) Between November 30, 2016 and September 12, 2017, Debtor did not disclose that the case had been dismissed. (SUF ¶ 20.)

### The State Cases

On December 13, 2016, the City of Stamford and the Board of Trustees of the Classified Employees Retirement Fund filed suit against Mr. Ruszkowski in the Circuit Court of Cook County, Illinois. (SUF ¶ 21.) On January 3, 2017, the City of Stamford, Classified Employee Retirement Fund filed suit against Dr. Griffith in the General Court of Justice, Superior Court Division in North Carolina. (SUF ¶ 22.) On January 12, 2017, the City of Stamford filed suit against Ms. King in the District Court, City and County of Denver, Colorado. (SUF ¶ 23.) In each of these three "State Cases," the City sought to recoup the alleged extra pension payments made to the Plaintiffs, which the City asserted were made erroneously and by accident. (SUF ¶ 24.)

After each of the Plaintiffs were served in the State Cases, Debtor explained to Plaintiffs that he would represent them in the State Cases and would move to consolidate the three State Cases into the Connecticut Federal Case. (SUF ¶ 25.) Debtor even had Dr. Griffith and Ms. King sign separate engagement letters for Debtor's alleged representation of Dr. Griffith in the North Carolina Case and Ms. King in the Colorado case. (Declaration of Dana Renee Griffith, dated November 16, 2021 ("Griffith Decl.") ¶ 13, Exhibit 2; and Declaration of Jill Kathleen King, dated November 16, 2021 ("King Decl.") ¶ 15, Exhibit 2.) Debtor never told any of the Plaintiffs that he was not licensed to practice law in Illinois, North Carolina, or Colorado. (SUF ¶ 26.) Debtor explicitly told Plaintiffs that he would be filing appearances on behalf of each of Plaintiffs in the State Cases. (SUF ¶ 27.) Yet, Debtor never filed his appearance on behalf of any of the Plaintiffs in any of the State Cases. (SUF ¶ 28.)

Based on Debtor's statements to Plaintiffs that Debtor was going to move to consolidate the State Cases with the Connecticut Federal Action, Mr. Ruszkowski repeatedly reached out to Debtor, inquiring on the status of the consolidation:

| February 21, 2017 | Email from Mr. Ruszkowski to Debtor:<br><br>"Also, did we ever hear back definitively about consolidating the cases from the NC, CO, and IL attorneys?" (SUF ¶ 37.) |
| --- | --- |
| March 10, 2017 | Email from Mr. Ruszkowski to Debtor:<br><br>"As an update, have the individual summons/cases against Dana, Jill, and me been successfully consolidated into the other case?" (SUF ¶ 38.) |

Debtor did not respond to Mr. Ruszkowski's February 21, 2017 or March 10, 2017 emails. Mr. Ruszkowski asked for an update regarding the status of consolidation again and Debtor explicitly wrote that he intended to file the consolidation motion on March 28, 2017:

| March 28, 2017 | Email from Mr. Ruszkowski to Debtor:<br><br>"My only question is around the reference to appearing in the three other states. **Does that mean the individual cases against us are not yet consolidated into the single case?** If so, do we need to do anything about that now?" (SUF ¶ 40.)<br><br>Debtor responded:<br><br>"to answer your question no they are not yet consolidated, that is what I intend to do today, as in right now, I was literally looking up the fees per court to accomplish this task so I can send you the itemized costs and have you wire it over  In either scenario with their cooperation or not, today is a good day to do it and all part of my tractor trailer[sic] down the highway strategy. I'll finish adding up the court fees and email you right back." (SUF ¶ 41.) |
| --- | --- |

Despite the fact that Debtor never filed appearances on behalf of any of the Plaintiffs in

6

any of the State Cases, and despite the fact the Debtor was not licensed to practice law in any of the states in which the State Cases were pending, Debtor billed Plaintiffs $750 for appearance fees and received that money:

| March 28, 2017 | Email from Debtor to Mr. Ruszkowski:<br><br>"Here is the wiring information to send the $750 ($250 x 3) to permit and pay for me to appear in your three other cases. Can you kindly wire that today? Thanks Rob. – DJM" (SUF ¶ 29.) |
|---|---|
| March 28, 2017 | Email from Debtor to Mr. Ruszkowski:<br><br>"Okay, it is the same fee across the board per case, regardless of the state, i.e., $250 per case, so $750 altogether." (SUF ¶ 30.) |

Debtor billed Plaintiffs for and received the $750 to file his appearances, even though he never filed his appearance in any of the State Cases. (SUF ¶¶ 31-34.)

In the Illinois State Case, Debtor did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment. (SUF ¶ 32.) In the North Carolina State Case, Debtor did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment. (SUF ¶ 33.) In the Colorado State Case, Debtor did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment. (SUF ¶ 34.)

Because Debtor failed to appear in any of the State Cases, default judgments were entered against each of the Plaintiffs in each of the State Cases. A default judgment was entered against Mr. Ruszkowski in the Illinois State Case on April 25, 2017. (Ruszkowski Decl. Exhibit 6.) A default judgment was entered against Dr. Griffith in the North Carolina State Case on October 11, 2017 (Griffith Decl. ¶ 26.)  A default judgment was entered against Ms. King in the Colorado State Case on March 9, 2017 (King Decl. ¶ 20.)

Despite the fact that Debtor billed for and received fees and costs for his alleged representation of Plaintiffs in each State Case, Debtor never told any of the Plaintiffs that default judgments had been entered against them. (SUF ¶ 35.) Debtor never told Mr. Ruszkowski that a default judgment had been filed against him in the Illinois State Case. (SUF ¶ 36.) Debtor never told Dr. Griffith that a default judgment had been entered against her in the North Carolina State Case. (SUF ¶ 36.) Debtor never told Ms. King that a default judgment had been entered against her in the Colorado State Case. (SUF ¶ 36.)

For example, on April 28, 2017, three days after the default judgment was entered against Mr. Ruszkowski, Debtor emailed Mr. Ruszkowski, but did not mention anything about the default judgment. (SUF ¶ 42.) On May 25, 2017, one month after the default judgment was entered against Mr. Ruszkowski, Debtor emailed Mr. Ruszkowski, writing: "… to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on." (SUF ¶ 43.)

On July 2, 2017, Mr. Ruszkowski emailed Debtor, notifying Debtor that Mr. Ruszkowski had received a citation to discover assets that day. Debtor responded the next day, again stating that Debtor would be filing motions on Plaintiffs' behalf in the State Cases:

| July 2, 2017 | Email from Debtor to Mr. Ruszkowski:<br><br>"I actually got my own papers this morning (and on a Sunday). I have uploaded them to the portal. The file name is Scan2017 2-7 something or other. It is called "Citation to Discover Assets" and other papers. I've also attached it here. This does seem to be getting a little ridiculous that this keeps happening when supposedly it shouldn't be. Let me know what I need to do. Please also let us know what you plan to do and what the results end up being. This of course make us a little anxious." (SUF ¶ 44) |
| --- | --- |
| July 3, 2017 | Email from Debtor to Mr. Ruszkowski: |

|  | Thanks Rob. I'll break down the steps for you that make up the plan in the next two days. In short, however, we will be filings a motion concerning what you attached this week though. I'll send you a copy for that too for you[r][sic] files." (SUF ¶ 45.) |
| --- | --- |
| July 6, 2017 | Debtor emailed Mr. Ruszkowski:<br><br>"Responding to your email from yesterday afternoon, I haven't posted an update yet just waiting for the clerk to respond to confirm. I will check it soon as I get back to my office and out of this traffic. And I will follow up with you later tonight after dinner time." (SUF ¶ 46.) |
| July 7, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"Just out of curiosity, what is the clerk going to discuss with you? Am I going to have to appear at the court date indicated on the papers I received?" (SUF ¶ 47.) |

Debtor never responded to Mr. Ruszkowski's July 7, 2017, email. (SUF ¶ 48.) Just two days later,

Mr. Ruszkowski wrote to Debtor regarding his concerns regarding the status of his State Court

case again:

| July 9, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"I am getting nervous about this upcoming court appearance required in the papers I received. I need to know if I will actually need to go to it so I can make appropriate arrangements. Please let me know." (SUF ¶ 49.) |
| --- | --- |
| July 11, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"I am getting very nervous about the status of our case and the papers I received. I don't know what is going on and whether I need to appear in court in a couple of weeks. Please call me at 312.860.5661." (SUF ¶ 51.)<br><br>Debtor responded: |

|  | "That is something they send out automatically. **You won't be attending or need to go. Don't be nervous.** I'll call you after my deposition today." (SUF ¶ 52.) |

After Debtor told Mr. Ruszkowski that he did not need to appear, Mr. Ruszkowski did not appear in response to the citation to discover assets. After this exchange, Mr. Ruszkowski repeatedly requested to discuss the status of the State Cases with Debtor. Mr. Ruszkowski specifically requested to see documentation that none of the Plaintiffs needed to appear in their respective State Cases.

| July 13, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"I'd really like to discuss this issue quickly. You mentioned you would provide documentation that this has been resolved, but we haven't seen anything yet. Let me know." (SUF ¶ 53.) |
| July 14, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"I don't get it, am I that unimportant? We have been receiving very threatening letters and the only thing we have heard from you is 'don't worry about it.' You promise that we will see documentation that it is resolved and nothing materializes. My letter literally says I can be arrested if I don't show up in court. How can you realistically expect me to ignore that based on what you have given me? I really need to talk to you about this. I have an incredibly high level of stress that is exacerbated by the fact that you are ignoring me. Please let me know when you can talk and let's talk then." (SUF ¶ 54.) |

In response to Mr. Ruszkowski's July 14th email to Debtor, Debtor emailed Mr. Ruszkowski, alleging that the clerk in one of the pending case was causing delays:

| July 18, 2017 | Debtor emailed Mr. Ruszkowski:<br><br>"The clerk is taking too long for my liking and I know you are anxious about progressing the state cases to a close so when I get out of court today I |

| | plan, if my research bears out the way I believe it will to prepare a temporary injunction to be filed with the federal court. The point of this will be to cease and stop any and all state court actions. I believe this will give you the relief you seek. How's everything else going with you and your family?" (SUF ¶ 55.)<br><br>Mr. Ruszkowski responded:<br><br>"Thanks for the email and yes, a temporary injunction sound like a very good solution and will provide the relief we are seeking. We are not usually involved in these kinds of things so any threatening-sounding document tends to set off alarms for us. What were you trying to get from the clerk? Was it something else? Please let me know when you have a draft of the temporary injunction and how it works to get it implemented." (SUF ¶ 56.) |
|---|---|

Debtor never sent Mr. Ruszkowski an injunction. (SUF ¶ 57.) Debtor never filed an injunction or any motion to consolidate the State Cases into the Connecticut Federal Action. (SUF ¶ 58.)

Despite the fact that he was not going to and did not file any sort of injunction, Debtor continued to represent that he had prepared, and was going to file, an injunction:

| July 21, 2017 | Debtor emailed Mr. Ruszkowski:<br><br>"Less[sic] you think I forgot about you, I did not. I am making a few final edits, as is my normal process. I can't submit something subpar (there's the control freak in me), plus in the evening … after the children are in bed, along with early morning… before aware, and before the phone calls begin and emails start flying etc. …. Well that is the best time research and write)[sic]." (SUF ¶ 59.) |
|---|---|
| July 23, 2017 | Mr. Ruszkowski responded:<br>"Am I able to see a draft of the injunction even if it is not filed yet? As we discussed, I still have anxiety over this." (SUF ¶ 60.) |
| July 24, 2017 | Debtor emailed Mr. Ruszkowski: |

11

| | "…and while the motion is good, I do have some other things that you can help out on." (SUF ¶ 61.) |

When Mr. Ruszkowski requested to see the actual motion or proof that it had been filed,

Debtor stopped responding:

| July 24, 2017 | Mr. Ruszkowski emailed Debtor: <br><br> "Great, can you send me the motion? Is it filed?" (SUF ¶ 62.) <br><br> Mr. Ruszkowski emailed Debtor again: <br><br> "I am feeling sick with anxiety. What is the status of this? Has the injunction been filed? If so, please send it to me. This has gone on way to[o] long and I need to get this put to bed. Please call me asap." (SUF ¶ 63.) |
| July 25, 2017 | Mr. Ruszkowski emailed Debtor: <br><br> "Let me know what you need my help on and please do send the injunction ASAP. You said you would send that as soon as it was done." (SUF ¶ 64.) |

Instead of responding to Mr. Ruszkowski's requests or sending a copy of the alleged motion,

Debtor responded regarding a hearing in a case in which Debtor did not file an appearance, and

then requested to be paid for services from five months earlier:

| July 25, 2017 | Debtor emailed Mr. Ruszkowski: <br><br> "I have some excellent news for you. The July 27, 2017 scheduled event for you has been officially put off. I told you not to worry." (SUF ¶ 65.) <br><br> Debtor emailed Mr. Ruszkowski again: <br><br> "Rob, I am glad I was able to get the 7/27/17 examination putoff[sic] for you. Now that the immediate issue has been resolved, I finally got around to billing at least February. Accordingly, I was wondering if you could send a wire in for February's bill. Thanks so much. I look forward to |

| | catching up with you this week so I can answer any additional questions you might have." (SUF ¶ 66.) |

Eventually, contempt orders and arrest warrants were issued against Mr. Ruszkowski and Ms. King. (SUF ¶ 67-68.) A contempt Order was entered and an arrest warrant was issued against Mr. Ruszkowski on November 9, 2017. (SUF ¶ 67; Ruszkowski Decl. ¶ 57.) A contempt Order was entered and an arrest warrant was issued against Ms. King on October 24, 2017. (SUF ¶ 68; King Decl. ¶ 22.) Debtor did not inform Mr. Ruszkowski that an arrest warrant had been issued against him. (SUF ¶ 69.) Debtor did not inform Ms. King that an arrest warrant had been issued against her. (SUF ¶ 70.)

Ms. King learned of the arrest warrant issued against her when she called the court regarding her divorce:

| November 15, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"Jill said the court told her there is an arrest warrant out for her? What is going on?<br>Am I in the same boat? We all assume you are taking care of things on our behalf and the difficulty in getting in touch with you is to manage legal costs. I think it is fair to say that we all need a comprehensive update immediately. When can we do this?" (SUF ¶ 72.) |
| November 20, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"Please let me know if there is a time in the near future we can catch up. Jill contacted the court on another matter (her divorce) and they told her there was an arrest warrant outstanding for her associated with this case. They said she can be taken to jail if she is pulled over for a traffic stop, etc. We really need to figure out what is going on ASAP." (SUF ¶ 73.) |
| November 21, 2017 | Mr. Ruszkowski emailed Debtor:<br><br>"Please let me know if there is time for a call. It would really be good to do this before thanksgiving." (SUF ¶ 74.) |

When Debtor responded, he misleadingly stated that he was in communications with opposing counsel regarding settling the federal case, ***even though that case had been dismissed two months before***:

| November 23, 2017 | Debtor emailed Mr. Ruszkowski: |
|---|---|
|  | "Good afternoon Robert, and A Happy Thanksgiving to you and your family. I'm sorry we didn't get to touch base last week, but I spoke with opposing counsel and they informed me they are recommending that their client give more consideration to settling the case, and that they are recommending an increase in settlement monies from the level we discussed. However, I don't' know how much of an increase … so the devil will be in the details. Hopefully opposing counsel will hear from their client soon and they can pass on their formal offer." (SUF ¶ 75.) |

After Ms. King found out at an arrest warrant had been issued for her by calling the court regarding her pending divorce, she expressed her concern over having an arrest warrant issued against her and needing to have it resolved as soon as possible:

| January 11, 2018 | Ms. King emailed Debtor: |
|---|---|
|  | "Hi Dale – can we please try to reschedule this call asap . . . and also I am really panicked about the arrest warrant situation." (SUF ¶ 76.) |
| January 24, 2018 | Debtor emailed Ms. King: |
|  | "Come to think of it . . . it is probably for the best we talk tomorrow though ... I am tired for one . . . but more importantly, I want to be able to properly confer with you, have your case file in front of me etc... I want to be able to go over the various court filings with you etc... and give you to a reasonable time in the day so you can review and ask any questions you might have, without feeling rushed or nodding off to sleep. Plus, if I'm at my office, as opposed to my car or court, I can always quickly fire up a screen sharing session where we can go over and interact with the documents live etc. … |

14

| | But to answer your most pressing question about travel; it will not be an issue. In fact, I know I have a hearing coming up in your case soon. In an abundance of caution, I would raise the issue again ... you can be present ... and I'll then move the court (judge) for an ore tenus order stating your[sic] are under no travel restriction and that no warrant is in effect etc. . . . That way you have clarity and peace of mind." (SUF ¶ 77.) |
|---|---|
| January 26, 2018 | Debtor emailed Ms. King:<br><br>"Thanks Jill. I just hung up with Judicial Assistant, its[sic] a go. So as I mentioned on the phone, this is the lowest airline ticket I could find that was the right time, dates, airports etc… (its economy with multiple stops), and the prices will only go up ... to save you some money so let's lock it in. Please have you or any other third party you deem appropriate wire the funds over today, I'll purchase it, and confirm with you once complete. (Invoice with wire information is attached). Thanks. I look forward to seeing you." (SUF ¶ 78.) |
| January 30, 2018 | Ms. King emailed Debtor:<br><br>"Hi Dale - my dad wired the funds this morning since we didn't hear back about paying with a credit card. I'll leave you a voice mail too. Thanks! -Jill King." (SUF ¶ 79.) |

### **The Illinois Federal Action**

The Illinois Federal Action was commenced on or about August 22, 2019. (SUF ¶ 80.) Debtor did not appear in the Illinois Federal Action, and a default was entered against him on January 14, 2019. (SUF ¶ 81.) Subsequently, Plaintiffs received permission to file a motion for default judgment against Debtor, which motion was filed on May 31, 2019. (SUF ¶ 82.) The Illinois Court held a prove up hearing on July 23, 2019 and, the same day, entered the Federal Judgment in the amount of $395,237.58 against Debtor, consisting of actual damages in the amount of $365,237.58, and emotional damages of $30,000.00. (SUF ¶ 83.)

## III.  **ARGUMENT**

### A.  **Standard of Review.**

Under Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, a court shall grant summary judgment upon a showing by the movant that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When considering a motion for summary judgment "the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (internal quotation marks omitted).

"At the summary judgment stage, the moving party bears the burden of showing that there are no material facts in dispute and the court is to draw all reasonable inferences, and resolve all ambiguities, in favor of the non-moving party." *Id.* (citing *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009)). "Once the moving party has met its burden, in order to defeat the motion, the 'party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Id.* (citing *In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)). "The 'mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Village Mtg. Co. v. Veneziano (In re Veneziano)*, No. 18-51243 (JAM), 2020 WL 1503233, at *4 (Bankr. D. Conn. Mar. 27, 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original)).

16

**B.      There Is No Genuine Dispute As To Any Material Facts Because All Facts Alleged In The Amended Complaint And The Incorporated Exhibits Are Deemed Admitted As True.**

Pursuant to Federal Rule of Civil Procedure 8(b)(6), any facts that are not denied when a responsive pleading is required, are admitted. Fed. R. Civ. Proc. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 351 (S.D.N.Y. 2011) ("Because of the Defaulting Defendants' knowing and willful failure to respond to the Complaint, each of them is deemed pursuant to Federal Rule of Civil Procedure 8(b)(6) to have admitted these allegations. . . .").

On March 3, 2020, Plaintiffs filed an Amended Complaint pursuant to Rule 7015 of the Fed. R. Bank. P. and Rule 15(a)(1)(A) of the Fed. R. Civ. P. **(Docs. 15-16.)** Debtor failed to file a response to Plaintiffs' Amended Complaint on or before March 23, 2020, the deadline for him to response to the Amended Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). As of the date of Plaintiffs' present Motion, Debtor still has not responded to Plaintiffs' Amended Complaint. Therefore, all of the facts alleged in the Amended Complaint and the incorporated exhibits are admitted as true. Because all of the facts alleged in the Amended Complaint and the incorporated exhibits are deemed admitted as true, there is no genuine dispute as to any material facts.

**C.      Plaintiffs Are Entitled To Summary Judgment That The Debt Is Nondischargeable Under 11 U.S.C. § 523(a)(2)(A).**

Section 523 (a)(2)(A) of the Bankruptcy Code excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - false pretenses, false representations, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The purpose of Section 523(a)(2)(A) is to ensure that the Bankruptcy Code provides relief "only to an 'honest but unfortunate debtor.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018)

17

(quoting *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998)). Thus, Section 523(a)(2)(A) excludes from discharge all debts obtained by false pretenses or false representations, and all debts obtained by actual fraud, including fraudulent schemes of "concealment and hindrance" that do not include a debtor's misrepresentation to a creditor, or a creditor's reliance upon such a misrepresentation. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016); *see In re Rossman*, No. 17-51160, 2019 WL 3330781, at *6 (Bankr. D. Conn. July 24, 2019) (debt nondischargeable where debtor's "actions were intentionally carried out by deceit, artifice, trick, or design to cheat Guardian out of its customers and its business operations.").

To establish that a debt is excepted from discharge under § 523(a)(2)(A) on the basis of a misrepresentation, "a plaintiff must move that: (i) a debtor made the representation; (ii) at the time the debtor knew it was false; (iii) the debtor made it with the intention and purpose of deceiving a creditor; (iv) the creditor relied on such representation; and (v) the creditor sustained the alleged loss as the proximate cause of the representation." *In re Massie*, No. 14-50579 (JAM), 2018 WL 3218847, at *4 (Bankr. D. Conn. June 29, 2018).

Here, Debtor made numerous explicit false statements and omissions to Plaintiffs, which Debtor knew were false when he made them, and which he made with the intention of billing Plaintiffs for legal work and fees that were never incurred. Plaintiffs relied on these false statements and sustained substantial losses as a direct and proximate result of Debtor's false representations.

As outlined in detail in the Statement of Facts, Debtor repeatedly made false statements to Plaintiffs regarding his purported representation of them as their attorney. The numerous false statements and omissions fall into three categories: (i) Lies of Omission; (ii) Explicit False

18

Statements; and (iii) Fraudulent Representations/Billing Fraud. Debtor made the following false

representations to Plaintiffs, all while engaged to act as their attorney:

**Lies of Omission**

- Debtor did not tell Plaintiffs that an order to show cause had been filed against them in the Connecticut Federal Action because Debtor failed to meet deadlines set by the Court and the Federal Rules of Civil Procedure. (SUF ¶ 10.)

- Debtor did not tell Plaintiffs that he had failed to file a response to a motion to dismiss in the Connecticut Federal Action. (SUF ¶ 19.)

- Most significantly, Debtor never told Plaintiffs that their claims in the Connecticut Federal Action were dismissed. (SUF ¶ 20.)

- Debtor never told Mr. Ruszkowski that he was not licensed to practice law in Illinois. (SUF ¶ 26.)

- Debtor never told Ms. King that he was not licensed to practice law in Colorado. (SUF ¶ 26.)

- Debtor never told Dr. Griffith that he was not licensed to practice law in Illinois. (SUF ¶ 26.)

- Debtor never told Mr. Ruszkowski that a default judgment had been entered against him in the Illinois State Case. (SUF ¶ 36.)

- Debtor never told Ms. King that a default judgment had been entered against her in the Colorado State Case. (SUF ¶ 36.)

- Debtor never told Dr. Griffith that a default judgment had been entered against her in the North Carolina State Case. (SUF ¶ 36.)

- Debtor did not inform Mr. Ruszkowski that an arrest warrant had been issued against him. (SUF ¶ 69.)

- Debtor did not inform Ms. King that an arrest warrant had been issued against him. (SUF ¶ 70.)

**Explicit False Statements**:

- After each of the Plaintiffs were served in the State Cases, Debtor told Plaintiffs that he would represent them in the State Cases. (SUF ¶ 25.)

- After each of the Plaintiffs were served in the State Cases, Debtor told Plaintiffs that Debtor would move to consolidate the three State Cases into the Connecticut

Federal Case. (SUF ¶ 25.)

- Debtor explicitly told Plaintiffs that he would be filing appearances on behalf of each of Plaintiffs in the Illinois State Case, Colorado State Case, and North Carolina State Case, respectively. (SUF ¶ 27.) Yet, Debtor never filed his appearance on behalf of any of the Plaintiffs in any of the State Cases. (SUF ¶ 28.)

- On March 28, 2017, Debtor falsely stated that he planned to file a motion to consolidate the State Cases into the Connecticut Federal Action that same day:

    > "to answer your question no they are not yet consolidated, that is what I intend to do today, as in right now, I was literally looking up the fees per court to accomplish this task so I can send you the itemized costs and have you wire it over. . . . In either scenario with their cooperation or not, today is a good day to do it and all part of my tractor trailer[sic] down the highway strategy. I'll finish adding up the court fees and email you right back." (SUF ¶ 41).

    This statement is false because Debtor never filed a motion to consolidate the State Cases in the Connecticut Federal Action.

- On May 25, 2017, one month after the default judgment was entered against Mr. Ruszkowski, Debtor emailed Mr. Ruszkowski, writing:

    > "We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on." (SUF ¶ 43.)

    Debtor's statement that there was "nothing strange or out of the ordinary" was false because a default judgment had been entered against Mr. Ruszkowski. Additionally, even if Debtor wants to argue that this statement is not explicitly false, it is inherently false because Debtor never filed an appearance on behalf of Mr. Ruszkowski and, therefore, any statements about the status of the State Cases were false because Debtor had not filed and appearance and did not know what was going on in those cases.

- On July 3, 2017, Debtor emailed Mr. Ruszkowski and represented that he would be filing a motion regarding the [citation to discover assets] that Mr. Ruszkowski received:

    > "Thanks Rob. I'll break down the steps for you that make up the plan in the next two days. In short, however, we will be filings a motion concerning what you attached this week though. I'll send you a copy for that too for you[r][sic] files." (SUF ¶ 45.)

    This statement is false because Debtor did not file a motion in the Illinois State Case regarding the citation to discover assets, Debtor could not have filed a motion because he had not filed an appearance, and he never intended to send Mr. Ruszkowski a copy of a motion that Debtor never drafted.

- On July 6, 2017, as a follow up to his statement that he would be filing a motion in the Illinois State Case in response to the citation to discover assets, Debtor falsely represented that he was waiting for a clerk to respond:

  > "Responding to your email from yesterday afternoon, I haven't posted an update yet just waiting for the clerk to respond to confirm. I will check it soon as I get back to my office and out of this traffic. And I will follow up with you later tonight after dinner time." (SUF ¶ 46.)

  This statement is false because Mr. Ruszkowski never reached out to the clerk in the Illinois State Case and the clerk would not have communicated with him about that case, as he had not filed an appearance.

- On July 11, 2017, after Mr. Ruszkowski had repeatedly asked if he needed to attend court, Debtor falsely told him that he did not need to appear:

  > "That is something they send out automatically. **You won't be attending or need to go. Don't be nervous.** I'll call you after my deposition today." (SUF ¶ 52.)

  This statement is false because a court order requiring Mr. Ruszkowski's attendance had been issued and because Debtor had not filed an appearance and was not planning to or permitted to appear on Mr. Ruszkowski's behalf.

- On July 18, 2017, Debtor falsely represented that he was waiting for a court clerk to respond to him regarding a potential injunction that he was allegedly planning to file in the Connecticut Federal Action:

  > "The clerk is taking too long for my liking and I know you are anxious about progressing the state cases to a close so when I get out of court today I plan, if my research bears out the way I believe it will to prepare a temporary injunction to be filed with the federal court. The point of this will be to cease and stop any and all state court actions. I believe this will give you the relief you seek." (SUF ¶ 55.)

  This statement was false because Debtor was not in contact with any clerk about an injunction, Debtor never planned to file an injunction, and Debtor ultimately never filed any injunction.

- On July 21, 2017, Debtor continued this string of lies when he represented that he was "making a few final edits" to an injunction to consolidate the State Cases into the Connecticut Federal Action:

  > "Less[sic] you think I forgot about you, I did not. I am making a few final edits, as is my normal process. I can't submit something subpar (there's the control freak in me), plus in the evening … after the children are in bed, along with early morning… before aware, and before the phone calls begin

21

> and emails start flying etc. …. Well that is the best time research and
> write)[sic]." (SUF ¶ 59.)

This statement is false because Debtor did not prepare an injunction or a motion of
any kind for the Connecticut Federal Action or any of the State Cases. Debtor's
blatant lies to Mr. Ruszkowski were only further compounded by his laughable
suggestions that he "can't submit something subpar (there's the control freak in
me)."

- Three days later, on July 24, 2017, Debtor again falsely represented that he was
  preparing a motion to consolidate the State Cases into the Connecticut Federal
  Action:

> "…and while the motion is good, I do have some other things that you can
> help out on." (SUF ¶ 61.)

This statement is false because no such motion existed and no motion was filed in
any of the cases in which Debtor purported to represent Plaintiffs. Additionally,
when Mr. Ruszkowski asked again to see a copy of the motion, Debtor never
brought up the motion again, but instead changed the focus to a hearing that Debtor
had rescheduled for Mr. Ruszkowski. Egregiously, Debtor then immediately sent
an email requesting to be paid for work (which never occurred) dating back to
February 2017, which Debtor waited until July to bill for:

> "Rob, I am glad I was able to get the 7/27/17 examination putoff[sic] for
> you. Now that the immediate issue has been resolved, I finally got around
> to billing at least February. Accordingly, I was wondering if you could send
> a wire in for February's bill." (SUF ¶ 66.)

- On November 23, 2017, ***two months after the Connecticut Federal Action was
  dismissed***, Debtor falsely stated to Mr. Ruszkowski that Debtor was in
  communication with counsel for the City of Stamford regarding settling the federal
  case:

> "Good afternoon Robert, and A Happy Thanksgiving to you and your
> family. I'm sorry we didn't get to touch base last week, but I spoke with
> opposing counsel and they informed me they are recommending that their
> client give more consideration to settling the case, and that they are
> recommending an increase in settlement monies from the level we
> discussed. However, I don't' know how much of an increase … so the devil
> will be in the details. Hopefully opposing counsel will hear from their client
> soon and they can pass on their formal offer." (SUF ¶ 75.)

This statement is false because the Connecticut Federal Action was dismissed two
months prior to this false statement, Debtor was not in any communication with
opposing counsel, and no settlement was being discussed. The City of Stamford
and the Board of Trustees were certainly not discussing a settlement that paid

Plaintiffs more, when all of the claims that Plaintiffs brought against the City of Stamford and the Board of Trustees had already been dismissed.

- On January 24, 2018, months after a default judgment and arrest warrant had been issued against Ms. King, Debtor falsely represented that she had a hearing in her case that was scheduled and that he was going to appear for that hearing:

  "But to answer your most pressing question about travel; it will not be an issue. In fact, I know I have a hearing coming up in your case soon. In an abundance of caution, I would raise the issue again ... you can be present ... and I'll then move the court (judge) for an ore tenus order stating your[sic] are under no travel restriction and that no warrant is in effect etc. . . . That way you have clarity and peace of mind." (SUF ¶ 77.)

  This statement is false because there was no hearing scheduled in Ms. King's Colorado case, as an arrest warrant had been issued against her and a default judgment had been entered against her three months before. Additionally, this statement is false because Debtor represented that he was going to appear at the non-existent hearing on Ms. King's behalf, even though Debtor was not admitted to practice in Colorado and he had not filed an appearance in the Colorado Case.

- On January 26, 2018, Debtor falsely represented that he had spoken with a "judicial assistant" relating to the Colorado Case and that he confirmed that the non-existent hearing was set:

  "Thanks Jill. I just hung up with Judicial Assistant, its[sic] a go. So as I mentioned on the phone, this is the lowest airline ticket I could find that was the right time, dates, airports etc… (its economy with multiple stops), and the prices will only go up ... to save you some money so let's lock it in. Please have you or any other third party you deem appropriate wire the funds over today, I'll purchase it, and confirm with you once complete. (Invoice with wire information is attached). Thanks. I look forward to seeing you." (SUF ¶ 78.)

  It is clear that this is a false stating because: (i) no hearing was set in a case in which the default judgment had been entered three months before; (ii) Debtor never spoke to a "judicial assistant" because he was not admitted to practice In Colorado and had not filed an appearance in that case; and (iii) the fabricated "judicial assistant" did not confirm that a non-existent hearing was proceeding.

**Billing Fraud**:

Debtor billed Plaintiffs for legal fees and expenses that were never incurred, and was paid at least 29,643.72 for the fabricated legal fees and expenses. For example:

- On March 28, 2017, Debtor billed Plaintiffs $750, which he was paid, to file appearances in the Illinois State Case, the Colorado State Case, and the North

Carolina State Case on behalf of each of the Plaintiffs. Yet, Debtor never filed his appearance on behalf of any of the Plaintiffs in any of the State Cases. (SUF ¶ 28.)

- On January 26, 2018, Debtor emailed Ms. King about an airline ticket he purportedly needed to purchase to fly to Colorado for a hearing that was not scheduled in a case that was essentially closed, in which Debtor had not filed an appearance and was not legally permitted to practice law. Instead of letting Ms. King pay for the flight directly, Debtor ignored her requests to put his flight on a credit card, which caused Ms. King's father to wire the funds for the fake flight to Debtor. (SUF ¶¶ 78-79.) Debtor's false statements that the made-up hearing was proceeding and that he needed to fly to Colorado, directly caused Plaintiff to pay him for costs he never incurred.

True and accurate copies of the legal invoices sent by Debtor to Plaintiffs are attached to the accompanying Declarations of Mr. Ruszkowski and Ms. King.  (*See* Ruszkowski Decl. ¶ 83, Exhibit 24; King Decl. ¶ 37, Exhibit 14.)

Based on the myriad of Debtor's false statements, Plaintiffs incurred financial and emotional damages for (i) the default judgments that were entered against each of the Plaintiffs; (ii) legal fees paid to Debtor totaling at least $29,643.72; (iii) legal fees and expenses for new counsel to have the default judgments set aside, to have the arrest warrants voided, to stop the short sale of Dr. Griffith's home, and to attempt to set aside the judgment in the Connecticut Federal Action, totaling at least $209,790.69; and (iv) legal fees and expenses for new counsel to represent Plaintiffs in the malpractice Illinois Federal Action to obtain the judgment against Debtor totaling at least $43,209.16. The Illinois Federal Court also awarded Plaintiffs $30,000 in emotional damages for the harm that Debtor caused to Plaintiffs. The total judgment in the Illinois Federal Action was $395,237.58 plus interest that continues to accrue on this unpaid judgment. (SUF ¶ 83; Case No. 18-CV-05754, N.D. Ill., Doc. No. 25.)

The judgment against Debtor from the Illinois Federal Action is comprised of four separate categories of damages. First, the Illinois Court awarded Plaintiffs $82,594.01 for actual damages from the default judgments that were entered against each of the Plaintiffs. As outlined above,

Debtor repeatedly falsely stated that he was representing Plaintiffs in each of the State Cases. He even went so far as to bill them $750 for admittance fees in the State Case and requested additional retainers for representing Plaintiffs in the State Cases. (Ruszkowski Decl. ¶ 19, Exhibit 4.) When Debtor repeatedly made false statements that he was going to appear on behalf of Plaintiffs in the State Cases, Debtor knew those statements were false because: (i) Debtor had no intention of filing appearances on behalf of Plaintiffs; (ii) Debtor was not licensed to practice law in any of the states where the State Cases were pending; and (iii) Debtor ultimately never filed appearances on behalf of Plaintiffs. As a licensed attorney—at the time—Debtor knew that he needed to be licensed to practice law in a state before he could represent Plaintiffs in the State Cases. Debtor's repeated false statements that he was going to appear on behalf of Plaintiffs in the State Cases, directly caused Plaintiffs to not hire alternative counsel and directly caused default judgments to be entered against Plaintiffs. The total of the default judgments entered against Plaintiffs in the State Court cases was $82,594.01.

Second, the Illinois Court awarded Plaintiffs $29,643.72, for the amount of legal fees and expenses that Plaintiffs paid to Debtor. As outlined above, Debtor did not file appearances on behalf of Plaintiffs and did not do any legal work on behalf of Plaintiffs in the State Cases. Additionally, Debtor did not litigate the Connecticut Federal Action, which he was originally hired to litigate on behalf of Plaintiffs, resulting in an order to show cause and Plaintiffs' claims being dismissed. Debtor made false statements and representations in both emails and legal invoices, billings Plaintiffs for work that was never done and expenses that were never incurred. A review of the legal invoices from Debtor to the Plaintiffs shows repeated misrepresentations that he performed legal work, which it is clear Debtor never performed. (*See* Ruszkowski Decl. ¶ 83, Exhibit 24.)  For example, Debtor billed Plaintiffs $750 for appearances that he never filed. (*See*

*id.*) Debtor billed Ms. King an additional $1,500 retainer to represent her in the Colorado Case. (*See* King Decl. ¶15, Exhibit 2, ¶ 37, Exhibit 14). Debtor further billed Ms. King $1,053.20 for a flight that he never took to a hearing in Colorado that was never scheduled, because Ms. King's case had effectively been closed with a default judgment months before. (*See* Ruszkowski Decl. ¶ 83, Exhibit 24.) Debtor even billed Ms. King for an additional $1,165.52 in court filing fees and travel costs for the Colorado case when he never filed an appearance, never field any documents, and never traveled to Colorado for the non-existent hearing. (*See* King Decl. ¶ 37, Exhibit 14.) Plaintiffs caused these invoices to be paid in reliance on Debtor's false representations that these fees and expenses were incurred. The legal fees and expenses awarded to Plaintiffs in the Illinois Federal Action totaled $29,643.72.

Third, because Debtor directly caused default judgments to be entered against Plaintiffs, arrest warrants to be issued against Mr. Ruszkowski and Ms. King, and a short sale to be scheduled on Dr. Griffith's home, Plaintiffs were then required to engage alternative counsel to have the arrest warrants vacated, to try to have the default judgments set aside, and to stop the short sale of Dr. Griffith's home. The Illinois Federal Court awarded Plaintiffs $209,790.69 for legal fees incurred in the Illinois State Case, the Colorado State Case, the North Carolina State Case, and in the Connecticut Federal Action.

Fourth, the only way for Plaintiffs to try to recoup some of their losses from Debtor's false statements and violations of his fiduciary duties was to bring a malpractice claim against him in the Illinois Federal Action. The Illinois Federal Court awarded Plaintiffs $43,209.16 for legal fees incurred in the malpractice action, in which the judgment against Debtor that is now at issue, was obtained. The Illinois Federal Court also awarded Plaintiffs $30,000 for emotional damages caused by Debtor.

Because (i) Debtor made false statements to Plaintiffs regarding his representation of them as their attorney and regarding legal services that he did not render; (ii) Debtor knew the statements were false when he made them; (iii) Debtor made the false statements with the intention of deceiving Plaintiffs into paying Debtor for legal work that was never performed; (iv) Plaintiffs relied on Debtor's statements and advice because he was their attorney; and (v) Plaintiffs sustained significant losses, not only from the legal invoices that were fraudulent, but also as a direct result of Debtor failing to represent them in the State Cases. Therefore, the judgment from the Illinois Federal Action is exempt from discharge pursuant to § 523(a)(2)(A).

**D.      Plaintiffs Are Entitled To Summary Judgment That
         The Debt Is Nondischargeable Under 11 U.S.C. § 523(a)(4).**

Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." "While the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law." *In re Snyder*, 939 F.3d 92, 102 (2d Cir. 2019) (quoting *In re Hayes*, 183 F.3d 162, 166 (2d Cir. 1999) (internal quotation marks omitted)).

"[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56-57 (1998). A fiduciary relationship creates: "(a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any manner relating to the plaintiff." *Johnson v. Bank of America*, N.A., Docket No. X04-HHD-CV15-6066060-S, 2016 WL 7974180, at *4 (Conn. Super. Ct. December 12,

2016). "It is, of course, undisputed that attorneys owe fiduciary duties to their clients, including the duties of undivided loyalty and honesty." *Id.* (citing *Beverly Hills Concepts, Inc.*, 247 Conn. at 56-57); *see also Kalra v. Adler Pollock & Sheehan P.C.*, No. 3:18-CV-260 (KAD), 2019 WL 319397, at *4 (D. Conn. Jan. 24, 2019) (discussing fiduciary obligations of attorneys under Connecticut law).

"'Defalcation' generally is defined as 'a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation.'" *In re Hall*, 483 B.R. at 294 (quoting 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 523. 10[1][b], at 523-71 (16th ed. 2012)). "[F]raud typically requires a false statement or omission . . . defalcation [however] can encompass a breach of fiduciary obligation that [does not involve] falsity." *Bullock v. Bank of Champaign, N.A.*, 569 U.S. 267, 268 (2013). Thus, conduct constituting defalcation for the purposes of Section 523(a)(4) includes conduct that amounts to intentional wrongdoing, reckless conduct, conscious disregard of a substantial and unjustifiable risk that the conduct will result in a breach of a fiduciary obligation, or a gross deviation from the standard of care. *Bullock*, 569 U.S. at 274-75; *In re Mulligan*, 763 F. App'x 70, 74 (2d Cir.), *cert. denied sub nom. Mulligan v. Jalbert*, 140 S. Ct. 48 (2019).

*In re Mulligan* involves facts similar to the present case. There, the debtor was an attorney who had taken funds from his clients based upon a misrepresentation: that he needed to demonstrate to a title insurance company that he had received cash, rather than in-kind compensation for his services. *Id.* at 72. The debtor-attorney was able to obtain insurance coverage for his clients, but returned less than the sum of money that his clients had given to him. *Id.* The debtor's clients pursued an action against him in state court for, *inter alia*, fraud, theft and conversion. *Id.* While the state court action was pending, the debtor filed a petition for relief under

Chapter 7 of the United States Bankruptcy Code. *Id.* The debtor's clients then commenced an adversary proceeding against the debtor to exclude the state court judgment from discharge under Section 523(a)(4). While the adversary proceeding was pending, the state court granted judgment in favor of the debtor's clients on their claims for theft and conversion. *See In re Mulligan*, 577 B.R. 6, 13 (Bankr. D. Conn. 2017).

The Bankruptcy Court in *Mulligan* granted summary judgment to the debtor-attorney's clients on their defalcation claim pursuant to Section 523(a)(4), and did not discharge the judgment awarded to debtor's clients for their claims for theft and conversion. *Id.* at 17. The District Court affirmed the Bankruptcy Court's Summary Order on appeal. *Mulligan v. Jalbert*, No. 3:17-CV-01873 (JAM), 2018 WL 7506431, at *1 (D. Conn. May 3, 2018). On appeal from the District Court's Order Affirming Decision of Bankruptcy Court, the Second Circuit also affirmed, finding that the debtor had "intentionally misled" his clients with the "intent to deprive them of property," which "is an obvious breach of fiduciary duty." *In re Mulligan*, 763 F. App'x 70, 74 (2d Cir.). The Second Circuit concluded that the Bankruptcy Court did not err in its finding "that Mulligan possessed the required mental state for defalcation—that is, that he knew, or was grossly reckless with respect to, 'the improper nature of [his] fiduciary behavior.'" *Id.* (citing *Bullock*, 569 U.S. at 269).

Here, Plaintiffs engaged Debtor to represent them as their attorney in the Connecticut Federal Action. (SUF ¶ 5; Ruszkowski Decl. ¶ 7, Exhibit 1.) Plaintiffs engaged Debtor further to represent them in each of the State Cases. (*See* Griffith Decl. ¶ 13, Exhibit 2; King Decl. ¶ 15, Exhibit 2.) There can be no doubt that when Debtor made false statements, omitted material information, and submitted fraudulent legal invoices, Debtor was simultaneously acting as Plaintiffs' attorney and owed Plaintiffs a fiduciary duty.

29

As outlined in detail in Section III.C., *supra*, Debtor made repeated false statements, omissions, and submitted fraudulent legal invoices that demonstrate intentional wrongdoing, reckless conduct, and a conscious disregard of a substantial and unjustifiable risk that Debtor's conduct would result in a breach of his fiduciary obligations to Plaintiffs. To call Debtor's conduct towards Plaintiffs a "gross deviation from the standard of care" is a massive understatement. Debtor defrauded Plaintiffs while he was acting as their attorney, which caused Plaintiffs to trust Debtor and follow his advice. Because the award in the Illinois Federal Action is based completely on Debtor's misconduct, the judgment should not be discharged pursuant to Section 523(a)(4).

      **E.**      **<u>Plaintiffs Are Entitled To Summary Judgment That The Attorneys'</u>**
                  **<u>Fees Awarded By The Court In The Illinois Action Are Nondischargeable.</u>**

A judgment awarding attorneys' fees and costs to a creditor in a prior action is exempt from discharge "to the extent that they arise out of or are ancillary to the nondischargeable debt." *In re Thompson*, 511 B.R. at 33 (quoting *In re Cardin*, No. 11–52077, 2013 WL 1092118 (Bankr. E.D. Tenn. Jan. 31, 2013)). In the Illinois Federal Action, the court awarded Plaintiffs $43,209.16 for attorneys' fees and expenses in litigating that malpractice action and securing that judgment. (SUF ¶ 83; Case No. 18-CV-05754, N.D. Ill., Doc. No. 25.)  Accordingly, Plaintiffs' attorneys' fees arise out of and are ancillary to the non-dischargeable judgment.

**IV.**    **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs respectfully submit that they are entitled to the entry of judgment in their favor, denying Debtor's discharge of Plaintiffs' claims pursuant to 11

U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4).

Dated: Greenwich, Connecticut
      March 4, 2022

IVEY, BARNUM & O'MARA, LLC

By:      */s/ Ryan S. Tougias*
     Michael J. Jones, Esq. (ct09759)
     Ryan S. Tougias, Esq. (ct28830)
     170 Mason Street
     Greenwich, Connecticut 06830
     Telephone: (203) 661-6000
     Email: mjones@ibolaw.com
            rtougias@ibolaw.com

     *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2022, a copy of the foregoing was filed electronically and served by U.S. mail, first class postage prepaid on any party unable to accept electronic filing. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any party unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Ryan S. Tougias*
Ryan S. Tougias, Esq. (ct28830)