## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.    19-51232 (JAM) |
| DALE MORGADO, ) | |
|     Debtor. ) | CHAPTER    7 |
| ) | |
| ROBERT LEE RUSZKOWSKI, JR., ) | |
| DANA RENEE GRIFFITH, AND ) | |
| JILL KATHLEEN GREEN, ) | |
|     Plaintiffs, ) | |
| ) | |
|     vs. ) | |
| ) | ADV. PRO. NO.    19-05036 (JAM) |
| DALE MORGADO, ) | |
|     Defendant. ) | ECF NO.    22 |
| ) | |

### APPEARANCES

Michael J. Jones, Esq.                            *Attorneys for the Plaintiff*
Ryan S. Tougias, Esq.
Ivey, Barnum & O'Mara, LLC
170 Mason Street
Greenwich, Connecticut 06830

Mr. Dale Morgado                                    *Pro Se Defendant*
19 Sugar Hollow Road
Wilton, Connecticut 06897

### CORRECTED MEMORANDUM OF DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Julie A. Manning, United States Bankruptcy Judge

      This corrected Memorandum of Decision and Order Granting Motion for Summary

Judgment is the controlling Memorandum of Decision and is being docketed to correct

typographical errors in the Memorandum of Decision that appears at ECF No. 34.

I.      **INTRODUCTION**

On September 13, 2019, Dale Morgado (the "Debtor" or the "Defendant"), through counsel, filed a voluntary Chapter 7 petition commencing his bankruptcy case.  On December 23, 2019, Robert Lee Ruszkowski, Jr., Dana Renee Griffith, and Jill Kathleen Green[1] (collectively, the "Plaintiffs") commenced this adversary proceeding against the Defendant by filing a two-count complaint objecting to the Defendant's discharge and seeking a determination that the debt owed to them by the Defendant is non-dischargeable (the "Complaint," ECF No. 1). Although the Defendant was represented by counsel when his Chapter 7 case was filed, on February 12, 2020, the Defendant, appearing *pro se*, responded to the Complaint by filing a Motion to Dismiss and for a More Definite Statement.

On March 2, 2020, the Plaintiffs filed a three-count Amended Complaint (the "Amended Complaint," or "AC," ECF No. 15).  Count One of the Amended Complaint alleges that the debts owed by the Defendant to the Plaintiffs are non-dischargeable under 11 U.S.C. § 523(a)(2). Count Two alleges that the debts owed by the Defendant to the Plaintiffs are non-dischargeable debt under 11 U.S.C. § 523(a)(4).  Count Three alleges that the debt owed to the Plaintiffs includes attorneys fees and costs awarded in the United States District Court in the Northern District of Illinois (the "Illinois District Court Action") and requests that interest on the fees and costs award also be considered part of the debt.

A pretrial conference was held in this adversary proceeding on March 10, 2020.  The Plaintiffs appeared at the pretrial conference, but the Defendant did not appear.  Several matters

---

[1] Plaintiff Jill Kathleen Green legally changed her name during the course of this adversary proceeding from Jill Kathleen King to Jill Kathleen Green.  Accordingly, all references to Jill Kathleen King have been changed from "Plaintiff King" to "Plaintiff Green," including references to Plaintiff King's Declaration, ECF No. 22, Ex. 2, which will hereinafter be referred to as "Plaintiff Green's Declaration."

were discussed during the pretrial conference, including the Motion to Dismiss and for a More Definite Statement. The day after the pretrial conference, an Order Denying the Motion to Dismiss and for a More Definite Statement entered. (ECF No. 20.)

On March 4, 2022, the Plaintiffs filed a Motion for Summary Judgment (the "Motion for Summary Judgment," ECF No. 22) on all counts of the Amended Complaint. The Defendant was required to respond to the Motion for Summary Judgment on or before March 25, 2022, *see* ECF No. 22. The Defendant did not file a response to the Motion for Summary Judgment. On April 19, 2022, the Court entered an Order Requiring Compliance with D. Conn. L. Civ. R. 56(b) because the Plaintiffs had not filed a Notice to Self-Represented Litigant Concerning Motion for Summary Judgment on the Defendant (the "Notice"). On April 19, 2022, the Plaintiffs filed on the docket the Notice and a certificate of service evidencing that the Notice had been served on the Defendant. The Defendant has not filed any response to the Motion for Summary Judgment or the Notice.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I). There is no constitutional issue precluding the exercise of jurisdiction in this case. *Cf. Stern v. Marshall*, 564 U.S. 462, 487-99 (2011).

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 directs that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Upon consideration of a motion for summary judgment, 'the judge's function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746 (Bankr. D. Conn. 2014) (quoting *Anderson*, 477 U.S. at 249). "[T]he court 'cannot try issues of fact; it can only determine whether are issues to be tried.'" *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no material issues of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)). Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

In 2009, Fed. R. Civ. P. 56(b) was amended to allow a party to file a motion for summary judgment at "any time until 30 days after the close of all discovery." *Compare* Fed. R. Civ. P. 56(b) *with* Fed. R. Civ. P. 56(b) (Repealed 2009). *See* 10 COLLIER ON BANKRUPTCY ¶ 7056.04 (16th Ed. 2022). Therefore, the Plaintiff's Motion for Summary Judgment was permissibly filed before the Defendant filed an answer. Because, among other things, the Defendant did not appear at the pretrial conference held on March 10, 2020, the Court has not set a date for the close of discovery. However, the Defendant has had ample time to file an answer or pursue discovery in this adversary proceeding. For the reasons set forth below, the Motion for Summary Judgment is granted.

## IV.   <u>UNDISPUTED FACTS</u>

Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut[2] requires that a party moving for summary judgment file a Local Rule 56(a)(1) Statement of Undisputed Material Facts. *See* D. Conn. L. R. 56(a)(1). Local Rule 56(a)(2) requires that a party opposing a motion for summary judgment file a Local Rule 52(a)(2) Statement of Facts in Opposition to Summary Judgment. *See* D. Conn. L. R. 56(a)(2).

Each material fact set forth in a movant's Statement of Undisputed Material Facts and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule." *See* D. Conn. L. R. 56(a)(1); *see also In re Delaney*, 504 B.R. at 745-47. Here, the Plaintiffs filed the Local Rule 56(a)(1) Statement of Undisputed Material Facts along with the Motion for Summary Judgment (the "Plaintiffs' Rule 56(a)(1) Statement"). The Defendant has not responded to the Motion for

---

[2] Local Rule of Bankruptcy Procedure 7056-1 adopts the United States District Court for the District of Connecticut's Local Rule 56.

Summary Judgment and has failed to file a Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment despite being given an extension of time in which to do so.  Therefore, the material facts set forth in the Plaintiffs' Rule 56(a)(1) Statement supported by the evidence are deemed admitted.

The Court finds the following undisputed facts:[3]

1.  The Plaintiffs Mr. Ruszkowski, Dr. Griffith, and Ms. Green are siblings.  (AC, ¶ 20.)

2.  The Plaintiffs' mother, Kathleen Ruszkowski, was a member of the City of Stamford Registered Nurses Local 465 of Council #4 and a participant in the Stamford Classified Employees' Retirement Plan.  (AC, ¶ 20.)

3.  After Kathleen Ruszkowski passed away from lung cancer in 2008, the City of Stamford made pension payments to each of the Plaintiffs as her beneficiaries.  (AC, ¶¶ 21–22.)

4.  In 2016, the City of Stamford ("Stamford") sent a letter to each of the Plaintiffs stating that Stamford had erroneously made excess pension payments to each of the Plaintiffs and that Stamford was demanding repayment of the excess payments.  (AC, ¶ 23.)

5.  In response to Stamford's collection efforts, the Plaintiffs engaged and hired the Defendant Dale James Morgado (the "Defendant") as their lawyer to resolve the dispute with Stamford regarding the alleged excess pension payments.  (AC, ¶ 24.)

6.  The Defendant was admitted to practice law in Connecticut on November 5, 2007, was admitted to practice law in Florida on April 16, 2009, and was admitted to practice law in New York on March 11, 2014.  (AC, ¶ 25.)

7.  The Defendant was never licensed to practice law in Illinois, North Carolina, or

---

[3] All facts are derived from the Plaintiffs' Rule 56(a)(1) Statement, the references contained in the Rule 56(a)(1) Statement, exhibits attached to the Motion for Summary Judgment, and the Plaintiffs' Declarations.  The Plaintiffs' Declarations are attached to the Motion for Summary Judgment, ECF No. 22, as exhibits 1–3.

Colorado.  (AC, ¶ 26.)

8.  From October 2016 to March 2018, the Defendant collectively billed the Plaintiffs $29,643.72 for legal fees and services (Ruszkowski Decl., ¶ 83).  The Plaintiffs paid the Defendant $29,643.72 for the legal fees and services the Defendant represented he had incurred and completed (Ruszkowski Decl., ¶ 84, Ex. 24.)

### The Connecticut District Court Action

9.  On November 30, 2016, the Defendant filed a complaint on behalf of the Plaintiffs against Stamford and the Board of Trustees of the Classified Employees Retirement Fund (the "Retirement Fund") in the United States District Court for the District of Connecticut with respect to the alleged excess pension payments made to the Plaintiffs ("Connecticut Complaint, Case No. 16-CV-01953-SRU (the "Connecticut District Court Action").  (AC, ¶ 27.)

10.  On March 27, 2017, Stamford filed a Motion to Dismiss in the Connecticut District Court Action (the "First Motion to Dismiss").  *See Ruszkowski v. Stamford*, 16-cv-01953 (D. Conn. 2017), ECF No. 12.

11. On April 17, 2017, the Connecticut District Court entered an order to show cause ordering the Defendant, as counsel to the Plaintiffs, to show why the case against Stamford and the Retirement Fund should not be dismissed for failure to prosecute.  (AC, ¶ 30.)

12. The Defendant never informed the Plaintiffs that an order to show cause had been issued in the Connecticut District Court Action.  (AC, ¶ 32.)

13.  On May 25, 2017, Plaintiff Ruszkowski sent the Defendant an email that stated: "Should we have an update call? It sounded like there are things we need to discuss. I have no idea what is going on."  (AC, ¶ 32; Amended Complaint Exhibit ("AC Ex.") 1.)

14.  On May 25, 2017, the Defendant responded to Plaintiff Ruszkowski's email, writing

in part: "We certainly can, but to save you the suspense, it is business as usual, so nothing strange or out of the ordinary to fill you in on."  (AC ¶ 32; AC Ex. 1.)

15.  On July 27, 2017, the Retirement Fund filed a motion to dismiss the complaint (the "Second Motion to Dismiss") to which a response was due August 17, 2017.  (AC, ¶ 33.)  On September 1, 2017, the Connecticut District Court entered an Order stating that the Retirement Fund's motion to dismiss would be granted unless the Plaintiffs [through the Defendant as their counsel] responded by September 8, 2017.  (AC, ¶ 34.)

16.  The Defendant never filed a response to the First Motion to Dismiss or to the Second Motion to Dismiss.  (AC, ¶ 34.)

17.  On September 12, 2017, the Connecticut District Court entered an order granting the Second Motion to Dismiss.  (AC, ¶ 35.)

18.  Approximately one week later, the Connecticut District Court entered another order granting the First Motion to Dismiss and closing the Connecticut District Court Action.  (AC, ¶ 35.)

19.  Between November 30, 2016, and September 12, 2017, the Defendant was in communication with the Plaintiffs via email and telephone calls.  (AC, ¶ 36.)

20.  Between November 30, 2016, and September 12, 2017, the Defendant did not disclose to the Plaintiffs that an order to show cause had been issued in the Connecticut District Court Action based on the Defendant's failure to meet deadlines set by the Connecticut District Court and the Federal Rules of Civil Procedure. (AC, ¶ 36.)

21.  Between November 30, 2016, and September 12, 2017, the Defendant did not disclose to the Plaintiffs that he had failed to file a response to the First Motion to Dismiss or to the Second Motion to Dismiss.  (AC, ¶ 36.)

22.  Between November 30, 2016, and September 12, 2017, the Defendant did not Disclose to the Plaintiffs that the Connecticut District Court Action had been dismissed. (AC, ¶ 36.)

### **The Illinois, North Carolina, and Colorado State Court Cases**

23.  On December 13, 2016, while the Connecticut District Court Action was still pending, Stamford and the Retirement Fund filed suit against the Plaintiff Ruszkowski in the Circuit Court of Cook County, Illinois.  (AC, ¶ 39.)

24.  On January 3, 2017, while the Connecticut District Court Action was still pending, Stamford and the Retirement Fund filed suit against the Plaintiff Griffith in the General Court of Justice, Superior Court Division in North Carolina.  (AC, ¶ 40.)

25.  On January 12, 2017, while the Connecticut District Court Action was still pending, Stamford and the Retirement Fund filed suit against the Plaintiff Green in the District Court, City and County of Denver, Colorado (collectively, with the actions described in Paragraphs 21–22, the "State Court Cases").  (AC, ¶ 41.)

26.  In each of the State Court Cases, Stamford and the Retirement Fund sought to recoup the alleged excess pension payments made to the Plaintiffs, which Stamford alleged were made erroneously.  (AC, ¶ 42.)

27.  After each of the Plaintiffs were served in the State Court Cases, the Defendant represented to the Plaintiffs that he would represent them in the State Court Cases and would move to consolidate the three State Court Cases into the Connecticut District Court Action.  (AC, ¶ 44.)

28.  The Defendant never told any of the Plaintiffs that he was not licensed to practice law in Illinois, North Carolina, or Colorado.  (AC, ¶ 45.)

29.  The Defendant explicitly told the Plaintiffs that he would be filing appearances on behalf of each of the Plaintiffs in the State Court Cases.  (AC, ¶ 47.)

30.  The Defendant never filed his appearance on behalf of the Plaintiffs in any of the State Court Cases.  (AC ¶ 48.)

31.  On March 28, 2017, the Defendant emailed Plaintiff Ruszkowski, writing in part: "Here is the wiring information to send the $750 ($250 x 3) to permit and pay for me to appear in your three other cases.  Can you kindly wire that today?"  (AC, ¶ 48; AC Ex. 2.)

32.  On March 28, 2017, the Defendant emailed Plaintiff Ruszkowski, writing to confirm the amount owed for him to file appearances in each of the State Court Cases: "Okay, it is the same fee across the board per case, regardless of the state, i.e., $250 per case, so $750 altogether."  (AC, ¶ 49; AC Ex. 3.)

33.  The Plaintiffs paid $750 to the Defendant to file appearances on their behalf in each of the State Court Cases.  (AC, ¶ 50.)

34.  In the Illinois State Case, the Defendant did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment.  (AC, ¶¶ 54, 56.)

35.  In the North Carolina State Case, the Defendant did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment.  (AC, ¶¶ 54, 56.)

36.  In the Colorado State Case, the Defendant did not file an appearance, did not hire local counsel, did not respond to the complaint, and did not respond to the motion for default judgment.  (AC, ¶¶ 54, 56.)

37.  On February 21, 2017 and March 10, 2017, Plaintiff Ruszkowski emailed the

Defendant about consolidating the State Court Cases with the Connecticut District Court Action. (AC, ¶ 52; AC Ex. 4-5.)   The Defendant did not respond to Plaintiff Ruszkowski's February 21, 2017, and March 10, 2017 emails. (AC, ¶ 53.)

38.   On March 19, 2017, a default judgment was entered against Plaintiff Green in the Colorado State Court Case.  (Green Decl., ¶ 20).  On April 25, 2017, a default judgment was entered against Plaintiff Ruszkowski in the Illinois State Court Case. (AC, ¶ 60).  On October 11, 2017, a default judgment was entered against Plaintiff Griffith in the North Carolina State Court Cases.  (Griffith Decl., ¶ 26.)

39.   The Defendant never told nor in any way informed any of the Plaintiffs that default judgments had been entered against each of them in the State Court Cases.  (AC, ¶ 60.)

40.   On March 28, 2017, Plaintiff Ruszkowski emailed the Defendant, asking about whether the State Court Cases had been consolidated with the Connecticut District Court Action. (AC, ¶ 58; AC Ex. 3.)  On March 28, 2017, the Defendant responded to Plaintiff Ruszkowski's email and said the State Court Cases were not yet consolidated with the Connecticut District Court Action.  (AC, ¶ 58; AC Ex. 3.)

41.  On April 28, 2017, three days after the default judgment was entered against Plaintiff Ruszkowski in the Illinois State Court Case, the Defendant emailed Plaintiff Ruszkowski but did not mention anything about the default judgment.  (AC, ¶ 60; AC Ex. 6.)

42.   On July 2, 2017, Plaintiff Ruszkowski emailed the Defendant, notifying the Defendant that he had received the citation to discover assets in the Illinois State Court Case. "Please also let us know what you plan to do and what the results end up being.  This of course make us a little anxious."  (AC, ¶ 63; AC Ex. 8.)  On July 3, 2017, the Defendant emailed Plaintiff Ruszkowski, writing in part:  "In short, however, we will be filings a motion concerning

what you attached this week though.  I'll send you a copy for that too for you[r][sic] files." (AC

¶ 63; AC Ex. 8.)  On July 6, 2017, the Defendant emailed Plaintiff Ruszkowski writing in part:

"Responding to your email from yesterday afternoon, I haven't posted an update yet just waiting

for the clerk to respond to confirm.  I will check it soon as I get back to my office . . ." (AC ¶ 63;

AC Ex. 9.)  On July 7, 2017, Plaintiff Ruszkowski emailed the Defendant, writing in part:  "Am I

going to have to appear at the court date indicated on the papers I received?" (AC, ¶ 63; AC Ex.

9.)  The Defendant never responded to Plaintiff Ruszkowski's July 7, 2017, email. (AC, ¶ 63.)

On July 9, 2017, Plaintiff Ruszkowski emailed the Defendant, writing:  "I am getting nervous

about this upcoming court appearance required in the papers I received.  I need to know if I will

actually need to go to it so I can make appropriate arrangements.  Please let me know." (AC, ¶

63; AC Ex. 10.)  The Defendant never responded to Plaintiff Ruszkowski's July 9, 2017 email.

(AC, ¶ 63.)

43.  On July 11, 2017, Plaintiff Ruszkowski emailed the Defendant, writing:  "I am

getting very nervous about the status of our case and the papers I received.  I don't know what is

going on and whether I need to appear in court in a couple of weeks.  Please call me at

312.860-5661." (AC, ¶ 63; AC Ex. 11.)  On July 11, 2017, the Defendant emailed Plaintiff

Ruszkowski, writing:  "That is something they send out automatically.  You won't be attending

or need to go.  Don't be nervous.  I'll call you after my deposition today." (AC, ¶ 63; AC Ex.

11.)  On July 13, 2017, Plaintiff Ruszkowski emailed the Defendant, writing:  "I'd really like to

discuss this issue quickly. You mentioned you would provide documentation that this has been

resolved, but we haven't seen anything yet. Let me know." (AC, ¶ 64; AC Ex. 12.)  On July 14,

2017, Plaintiff Ruszkowski emailed the Defendant writing in part:  "We have been receiving

very threatening letters and the only thing we have heard from you is 'don't worry about it.'

You promise that we will see documentation that it is resolved and nothing materializes. My letter literally says I can be arrested if I don't show up in court." (AC, ¶ 64; AC Ex. 13.) In response to Plaintiff Ruszkowski's July 14, 2017 email to the Defendant, the Defendant emailed Plaintiff Ruszkowski on July 18, 2017, writing in part: "The clerk is taking too long for my liking and I know you are anxious about progressing the state cases to a close so when I get out of court today I plan, if my research bears out the way I believe it will to prepare a temporary injunction to be filed with the federal court. The point of this will be to cease and stop any and all state court actions. I believe this will give you the relief you seek." (AC, ¶ 65; AC Ex. 14.) Plaintiff Ruszkowski responded to the Defendant's email, writing in part: "…yes, a temporary injunction sound like a very good solution and will provide the relief we are seeking. We are not usually involved in these kinds of things so any threatening-sounding document tends to set off alarms for us." (AC, ¶ 65; AC Ex. 14.) The Defendant never sent Plaintiff Ruszkowski a draft of a motion for a temporary injunction. (AC, ¶ 66.)

44.   The Defendant never filed a motion for a temporary injunction nor any motion to consolidate the State Court Cases into the Connecticut District Court Action. (AC, ¶ 66.)

45.   On July 21, 2017, the Defendant emailed Plaintiff Ruszkowski, writing in part: "Less[sic] you think I forgot about you, I did not. I am making a few final edits, as is my normal process. I can't submit something subpar (there's the control freak in me). . ." (AC, ¶ 67; AC Ex. 15.) On July 23, 2017, Plaintiff Ruszkowski emailed the Defendant, writing: "Am I able to see a draft of the injunction even if it is not filed yet? As we discussed, I still have anxiety over this." (AC, ¶ 67; AC Ex. 16.) On July 24, 2017, the Defendant emailed Plaintiff Ruszkowski, writing in part: "…and while the motion is good, I do have some other things that you can help out on." (AC, ¶ 67; AC Ex. 15.) On the same day, Plaintiff Ruszkowski responded to the

Defendant's email, writing: "Great, can you send me the motion? Is it filed?" (AC, ¶ 67; AC Ex. 16.) Later on the same day, Plaintiff Ruszkowski emailed the Defendant, writing: "I am feeling sick with anxiety. What is the status of this? Has the injunction been filed? If so, please send it to me. This has gone on way to[o] long and I need to get this put to bed. Please call me asap." (AC, ¶ 67; AC Ex. 16.) On July 25, 2017, Plaintiff Ruszkowski emailed the Defendant, writing: "Let me know what you need my help on and please do send the injunction ASAP. You said you would send that as soon as it was done." (AC, ¶ 68; AC Ex. 17.) Later that day, the Defendant responded to Plaintiff Ruszkowski's email, writing: "I have some excellent news for you. The July 27, 2017 scheduled event for you has been officially put off. I told you not to worry." (AC, ¶ 67; AC Ex. 17.) On July 25, 2017, the Defendant emailed Plaintiff Ruszkowski, writing in part: "Rob, I am glad I was able to get the 7/27/17 examination putoff [sic] for you. Now that the immediate issue has been resolved, I finally got around to billing at least February. Accordingly, I was wondering if you could send a wire in for February's bill." (AC, ¶ 67; AC Ex. 18.)

46. The Plaintiffs each reached out to the Defendant on repeated occasions to discuss the status of both the Connecticut District Court Action and State Court Cases. (Green. Decl., ¶. 64; Griffith Decl., ¶ 14; Ruszkowski Decl., ¶¶ 16–18, 28, 30, 33, 35, 37, 39–40, 45, 48–49.)

47. In response to each Plaintiff when asked about the status of the Connecticut District Court Action and the State Court Cases, the Defendant repeatedly represented to the Plaintiffs that there was no reason to worry about the default judgments, arrest warrants, and upcoming court dates. Furthermore, Plaintiff Green stated that the Defendant knew that she was under a great deal of stress and anxiety because of the arrest warrant because she repeatedly told him so via email and telephone calls. Each time, he assured her that she should not worry and that he

14

was "handling this."  (Green Decl., ¶¶ 64, 66; Griffith Decl., ¶¶ 18–20; Ruszkowski Decl., ¶¶ 38, 50.)

48.   The Defendant represented he was taking care of the Connecticut District Court Action by consolidating the State Court Cases into the Connecticut District Court Action (Green Decl., ¶¶ 22, 64; Griffith Decl., ¶ 14) and filing a temporary injunction in the Connecticut District Court Action (Ruszkowski Decl., ¶ 41.)

49.   Throughout the summer of 2017, Plaintiff Griffith contacted the Defendant each time she received documents associated with the North Carolina State Court Case, and in each interaction, the Defendant insisted Plaintiff Griffith should not worry about pending deadlines or court dates.  (Griffith Decl., ¶ 18.)  The Defendant represented to Plaintiff Griffith "the action I am taking could render [the North Carolina State Court Case hearing] moot."  (Griffith Decl., ¶ 19.)  The Defendant also instructed Plaintiff Griffith not to appear in the North Carolina State Court Case when Plaintiff Griffith asked whether she needed to attend an upcoming hearing or take steps to prepare for the hearing.  (Griffith Decl., ¶ 24.)

50.   On August 27, 2017, Plaintiffs Griffith, Ruszkowski, and Green contacted the Defendant about the consolidation of the State Court Cases into the Connecticut District Court Action.  The Defendant told Plaintiff Griffith there was no reason for her to appear in the North Carolina State Court Case (Griffith Decl., ¶ 20), instructed her not to appear for the scheduled hearing (Griffith Decl., ¶ 24), and billed her for his services provided in the North Carolina State Court Case. (Griffith Decl., ¶ 25.)  On November 15, 2017, Plaintiff Ruszkowski emailed the Defendant, writing in part:  "Jill said the court told her there is an arrest warrant out for her?  What is going on?  Am I in the same boat?  We all assume you are taking care of things on our behalf and the difficulty in getting in touch with you is to manage legal costs.  I think it is fair to

say that we all need a comprehensive update immediately." (AC ¶ 72, AC Ex. 19.)

51. On or before November 15, 2017, a contempt order was entered and an arrest warrant was issued against Plaintiff Green in the Colorado State Court Case. (AC, ¶ 71, AC Ex. 19.) On or before May 3, 2018, a contempt order was entered and an arrest warrant was issued against Plaintiff Ruszkowski in the Illinois State Case. (AC, ¶¶ 71, 82–83.) The Defendant did not inform Plaintiff Ruszkowski that an arrest warrant had been issued against Plaintiff Ruszkowski. (AC, ¶ 72.) The Defendant did not inform Plaintiff Green that an arrest warrant had been issued against Plaintiff Green. (AC, ¶ 72.) Plaintiff Green learned about the arrest warrant issued against her when she called the court regarding her divorce. (AC ¶ 72.)

52. On November 20, 2017, Plaintiff Ruszkowski emailed the Defendant, writing in part: "Jill contacted the court on another matter (her divorce) and they told her there was an arrest warrant outstanding for her associated with this case. They said she can be taken to jail if she is pulled over for a traffic stop, etc. We really need to figure out what is going on ASAP." (AC ¶ 72; AC Ex. 20.)

53. On November 21, 2017, Plaintiff Ruszkowski emailed the Defendant, writing: "Please let me know if there is time for a call. It would really be good to do this before thanksgiving." (AC ¶ 72; AC Ex. 20.)

54. On November 23, 2017 – two months after the Connecticut District Court Action was dismissed – the Defendant emailed Plaintiff Ruszkowski about the Connecticut District Court Action, writing in part: "I'm sorry we didn't get to touch base last week, but I spoke with opposing counsel and they informed me they are recommending that their client give more consideration to settling the case, and that they are recommending an increase in settlement monies from the level we discussed. However, I don't' know how much of an increase … so the

16

devil will be in the details.  Hopefully opposing counsel will hear from their client soon and they can pass on their formal offer." (AC ¶ 73; AC Ex. 21.)

55.  On January 11, 2018, Plaintiff Green emailed the Defendant, writing: "Hi Dale – can we please try to reschedule this call asap ... and also I am really panicked about the arrest warrant situation." (AC ¶ 76; AC Ex. 22.)

56.  On January 25, 2018, the Defendant emailed Plaintiff Green, writing in part: ". . . I want to be able to properly confer with you, have your case file in front of me etc... I want to be able to go over the various court filings with you etc. . . . and give you to a reasonable time in the day so you can review and ask any questions you might have, without feeling rushed or nodding off to sleep . . . In fact, I know I have a hearing coming up in your case soon. In an abundance of caution, I would raise the issue again you can be present and I'll then move the court (judge) for an ore tenus order stating your[sic] are under no travel restriction and that no warrant is in effect etc. That way you have clarity and peace of mind." (AC ¶ 76; AC Ex. 23.)

57.  On January 26, 2018, the Defendant emailed Plaintiff Green, writing in part:  "I just hung up with Judicial Assistant, its[sic] a go.  So as I mentioned on the phone, this is the lowest airline ticket I could find that was the right time, dates, airports etc. . . .  (its economy with multiple stops), and the prices will only go up . . . to save you some money so let's lock it in. Please have you or any other third party you deem appropriate wire the funds over today, I'll purchase it, and confirm with you once complete."  (AC ¶ 77; AC Ex. 25.)

58.  On January 30, 2018, Plaintiff Green emailed the Defendant, writing that the funds for the purchase of the airline ticket were wired to him.  (AC ¶ 78; AC Ex. 25.)

59.  In February and March 2018, the Defendant continued to represent to Plaintiff Green that he was appearing on her behalf in the Colorado State Court Case.  (Green Decl., ¶¶ 35–38.)

60.  On March 2, 2018, after confirming receipt of the funds received for travel to Colorado, the Defendant sent Plaintiff Green an invoice for legal services and travel costs to appear in her State Court Case.  (Green Decl., ¶¶ 36–37.)

61.  On April 25, 2018, after repeated unsuccessful attempts to contact the Defendant to discern the status of her State Court Case, Plaintiff Green contacted the court in her State Court Case and learned her arrest warrant was still outstanding.  (Green Decl., ¶ 39.)

62.  In June 2018, upon learning the Defendant's license to practice law was suspended in Connecticut, New York, and Florida, Plaintiffs Ruszkowski, Green, and Griffith hired a new law firm to represent them to attempt to reopen the Connecticut District Court Action.  (Ruszkowski Decl., ¶ 61; Griffith Decl., ¶ 28; Green Decl., ¶ 41.)

63.  In 2018, the Defendant's law license was suspended in Florida, New York, and Connecticut.  The Defendant's license to practice law in New York was suspended on January 30, 2018.  (Griffith Decl., Ex. B.)  The Defendant's license to practice law in Florida was suspended on July 12, 2018.  (Griffith Decl., Ex. C.)  The Defendant's license to practice law in Connecticut was suspended on July 25, 2018.  (Griffith Decl., Ex. D.)

64.  On August 16, 2018, as a result of the default judgment entered against her in the North Carolina State Court Case, Plaintiff Griffith received a Notice of Sale of Real Property, which stated her home would be sold at an auction scheduled to occur on September 11, 2018. (Griffith Decl., ¶ 29, Ex. 4.)

65.  The Plaintiffs retained new counsel to attempt to set aside the default judgments (Griffith Decl., ¶ 30; Ruszkowski Decl., ¶ 80; Green Decl., ¶ 60), vacate the arrest warrants for Plaintiffs Green and Ruszkowski (Green Decl., ¶ 59; Ruszkowski Decl., ¶ 79), and prevent the sheriff's sale of Plaintiff Griffith's home (Griffith Decl., ¶ 31.)

## The Illinois District Court Action

66.  On August 22, 2019, through new counsel, the Plaintiffs commenced an action against the Defendant in the Northern District of Illinois asserting claims of malpractice (the "Illinois District Court Action.").  (AC, ¶ 84.)

67.  The Defendant did not appear in the Illinois District Court Action, and a default was entered against him on January 14, 2019.  (AC, ¶ 85.)

68.  Subsequently, the Plaintiffs received permission to file a motion for default judgment against Defendant which was filed on May 31, 2019.  (AC, ¶ 86.)

69.  The Court held a hearing on July 23, 2019, and, the same day, entered the default judgment in the amount of $395,237.58 against the Defendant, consisting of actual damages in the amount of $365,237.58, and emotional damages of $30,000.00.  (AC, ¶ 87; AC, Ex. 27.)

70.  The default judgment in the Illinois District Court Action was not appealed and therefore is a final judgment.

## V.    DISCUSSION

It is well established the purpose of bankruptcy discharge is to provide a fresh start for the "honest but unfortunate debtor," and to enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).  The purposes of the exceptions to discharge set forth in 11 U.S.C. § 523 are provided "to prevent a debtor from retaining the benefits obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors."  4 COLLIER ON BANKRUPTCY, ¶ 523.08[a] (16th ed. 2022).  *See also Grogan* 498 U.S. at 284.  In *Grogan,* the Supreme Court established that for a plaintiff to prevail in a non-dischargeability action, the

plaintiff's claims must be proven by a preponderance of the evidence.  498 U.S. at 284.

**A.  Count One: false pretenses, false representation,**
**or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).**

To prevail on a section 523(a)(2)(A) claim, a plaintiff must establish five elements: (1) the defendant made a false representation; (2) at the time the representation was made, the defendant knew it was false; (3) the defendant made the representation with intent to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained loss or damage as a proximate consequence of the false representation. *See In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017).  For the purposes of section 523(a)(2)(A), "a false representation means that '(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'"  *Id.* (quoting *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)).  The Plaintiffs have established the elements required to succeed on section 523(a)(2)(A) in this case, as discussed below.

**(1)  The defendant made numerous**
**false representations and acted under false pretenses**

The evidence establishes that the Defendant made numerous and repeated false representations to the Plaintiffs in both the Connecticut District Court Action and in the State Court Cases.  The Defendant made these representations to all three Plaintiffs consistently, as set forth below.

**a.  Connecticut District Court Action**

In the Connecticut District Court Action, the Defendant made the following four false representations to all Plaintiffs: (i) he was prosecuting the Connecticut District Court Action on their behalf and there were no issues; (ii) he was consolidating the subsequently commenced

State Court Cases into the Connecticut District Court Action; (iii) he was working on drafting and filing an injunction; and (iv) he was working with opposing counsel in the Connecticut District Court Action on settlement discussions.

### (i) *Failure to litigate*

The Defendant failed to litigate the Connecticut District Court Action, did not inform the Plaintiffs when the Court entered an Order to Show Cause, and never filed a response to the First Motion to Dismiss or to the Second Motion to Dismiss.  Despite being in contact with all three Plaintiffs throughout the course of their attorney-client relationship, the Defendant never alerted his clients to the status of their cases.  Instead, he continued to falsely represent he was taking care of all legal matters, and there was no cause for concern in any of their cases.  According to the Defendant's representations, the Connecticut District Court Action was "business as usual."  At the time the Defendant made this representation, the two Defendants in the Connecticut District Court Action had filed motions to dismiss and the Connecticut District Court issued an order to show cause why the case should not be dismissed for failure to prosecute.

### (ii) *Consolidating the State Court Cases into the Connecticut District Court Action*

The Defendant represented to the Plaintiffs on multiple occasions that he was going to consolidate the State Court Cases into the Connecticut District Court Action, and this consolidation would take care of their State Court Cases.  The Defendant never filed a motion to consolidate the State Court Cases with the Connecticut District Court Action and therefore made numerous false representations to the Plaintiffs.

**(iii)** *Drafting and filing an injunction in the Connecticut District Court Action*

On multiple occasions throughout July 2017, the Defendant represented he that he would be filing an injunction in the Connecticut District Court Action, and that injunction would take care of the default judgments entered against Plaintiff Ruszkowski, Plaintiff Griffith, and Plaintiff Green in the State Court Cases. An injunction was never filed in the Connecticut District Court Action. Therefore, the Defendant falsely represented all facts involving drafting and filing an injunction to the Plaintiffs.

**(iv)** *Settlement discussions with opposing counsel*

In September 2017, the Connecticut District Court dismissed the Connecticut District Court Action and closed the case. The Defendant did not inform his clients the Connecticut District Court Action was dismissed. Instead, two months after its dismissal, the Defendant falsely represented to the Plaintiffs he was in settlement discussions with opposing counsel in the Connecticut District Court Action, "and they are recommending their client give more consideration to settling the case, and they are recommending an increase in settlement monies from the level we discussed." The Defendant's representation that he was engaged in settlement discussions with opposing counsel was a false representation, because the Connecticut District Court Action was dismissed two months before he made these representations to the Plaintiffs.

**b.   The State Court Cases**

The Defendant also made numerous and repeated false representations to the Plaintiffs regarding their State Court Cases. The Defendant falsely represented to the Plaintiffs that: (i) he would be filing appearances on their behalf in the Illinois, North Carolina, and Colorado State Court Cases, where he was not licensed to practice law; (ii) he worked the hours he billed the

Plaintiffs for fees he represented he incurred while appearing on their behalf; and (iii) he was continuously representing the Plaintiffs in the State Court Cases.

### (i) *Filing appearances on behalf of the Plaintiffs in the State Court Cases*

The Defendant falsely represented to the Plaintiffs that he had filed an appearance on for each of them in the Illinois, North Carolina, and Colorado State Court Cases. The Defendant never filed appearances on behalf of the Plaintiffs and never told the Plaintiffs that he was not licensed to practice law in Illinois, North Carolina, or Colorado. Further, the Defendant falsely represented he completed work in the State Court Cases for which he billed the Plaintiffs. The Defendant never hired local counsel to file appearances and did not respond to the motions for default judgments in any of the State Court Cases.

### (ii) *Continuously making false representations about the status of the State Court Cases*

The Defendant continued to falsely represent to the Plaintiffs Ruszkowski, Griffith, and Green that they did not need to appear in court. He made these false representations to the Plaintiffs, despite their default judgments and mounting legal notices from their respective State Court Cases.

Furthermore, the Defendant repeatedly falsely represented to Plaintiff Ruszkowski throughout the course of his State Court Case that – despite multiple notices from the State Court about his default judgment – there was no reason to worry about his upcoming court dates or citation to discover assets. On multiple occasions, the Defendant falsely represented he that he would be filing an injunction in the Connecticut District Court Action, and that injunction would take care of the default judgments entered against Plaintiff Ruszkowski.

The Defendant went a step further and represented to Plaintiff Ruszkowski that he was able to move an upcoming court date by filing this fictitious injunction: "excellent news . . . the

July 27, 2017 scheduled event for you has been officially put off.  I told you not to worry."  That statement was false.

In addition, the Defendant also repeatedly and consistently represented to Plaintiff Griffith there was no reason for her to appear at upcoming court dates. In the North Carolina State court Case, he explicitly instructed her not to appear in her State Court Case for a scheduled hearing after receiving several notices regarding the entry of default judgment against her.  The Defendant's representations were repeatedly and consistently false.

The Defendant also made false representations to Plaintiff Green.  After repeated requests from Plaintiff Green to help resolve the arrest warrant that was issued in connection with the Colorado State Court Action, the Defendant falsely represented he was flying to Colorado to appear in her State Court Case to set aside the arrest warrant issued to Plaintiff Green.  The Defendant continued to make false representations when he billed Plaintiff Green for the cost of a plane ticket to fly to Colorado and to appear on her behalf in the Colorado State Court Case.  The Defendant did not travel to Colorado to appear in court.

## False Pretenses

In addition to the numerous false representations the Defendant made to the Plaintiffs, he also acted under false pretenses through his deliberate non-disclosure of material facts.  He never disclosed to the Plaintiffs that the Connecticut District Court Action was dismissed and that he was not licensed to practice law in Colorado, Illinois, nor North Carolina.  In a section 523(a)(2)(A) cause of action, "deliberate nondisclosure of a material fact may amount to a 'false pretense' under ¶ 523(a)(2)(A)."  *Resolution Trust Corp. v. Roberti (In re Roberti)*, 183 B.R. 991, 1005 (Bankr. D. Conn. 1995) ("*Roberti I*").  *See also Minority Equity Capital Corporation v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809-810 (Bankr. E.D.N.Y. 1983).  A material fact is

one touching upon the essence of a transaction. *Federal Deposit Insurance Corporation v. Roberti (In re Roberti)* 201 B.R. 614, 627 (Bankr. D. Conn. 1996) ("*Roberti II*") (*citing to Caspers v. Van Horne* (*In re Van Horne*), 823 F. 2d. 1285, 1288 (8th Cir. 1987)). Here, the Defendant made a deliberate nondisclosure of a material fact when he chose to not disclose to the Plaintiffs that the Connecticut District Court Action was dismissed and when he represented to the Plaintiffs that he was in settlement discussions with opposing counsel.

Accordingly, the Defendant made numerous and repeated false representations to the Plaintiffs and acted under false pretenses when representing the Plaintiffs.

### (2) <u>At the time the representations were made, the Defendant knew the representations were false</u>

The Plaintiffs have provided more than ample evidence to establish that the Defendant knew at the time he made representations to the Plaintiffs described above that these representations described were false. The Defendant failed to litigate the Connecticut District Court Action, which was the only case pending in a jurisdiction where the Defendant was a licensed attorney.

In addition to his representations about the Connecticut District Court Action, the Defendant also knowingly made blatant false representations about the State Court Cases. First, the Defendant knew that he was not licensed to practice law in Illinois, North Carolina, and Colorado. Second, the Defendant knew he never filed appearances on behalf of the Plaintiffs in any of the State Court Cases. Furthermore, the Defendant knew that when he billed the Plaintiffs for these appearances and related services in the State Court Cases he never performed the services he represented to the Plaintiffs he provided.

**(3)  The Defendant made the representations with intent to deceive the Plaintiffs**

The Plaintiffs have established the Defendant made the numerous false representations to the Plaintiffs with intent to deceive the Plaintiffs.  While the Defendant continued to bill the Plaintiffs for legal work and services he did not complete, he clearly intended to deceive the Plaintiffs with respect to everything he said he was doing on their behalf.  However, the Plaintiffs have established that nothing he said was true.  His continued false representations were meant to deceive the Plaintiffs by not honestly informing the Plaintiffs of the status of the Connecticut District Court Action or any of the State Court Cases.

**(4)  The plaintiffs justifiably relied on the representation**

The Plaintiffs must have also "justifiably" relied upon the Defendant's representations to prove their 11 U.S.C. § 523(a)(2)(A) claim.  *Field v. Mans*, 516 U.S. 59, 78 (1995).  A "justifiable reliance" upon a false representation does not need to be reasonable.  *Id.*, at 74.  The inquiry is whether the falsity was or should have been readily apparent to the individual to whom it was made.  4 COLLIER ON BANKRUPTCY, ¶ 523.08[a] (16th Ed. 2022).  Here, the Plaintiffs were not attorneys and therefore hired the Defendant and relied upon his expertise as a lawyer to represent them in the Connecticut District Court Action and the State Court Cases.  Thus, the Plaintiffs justifiably relied upon the Defendant's representations that he was representing their interests in the Connecticut District Court Action and State Court Cases.

**(5)  The Plaintiffs sustained losses or damages
as a proximate consequence of the false representation**

Causation is the fifth and final requirement to prove a § 523(a)(1)(A) claim.  *In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017).  Here, the Plaintiffs each sustained damages as a direct consequence of the Defendant's numerous false representations.  The Defendant's false representations caused more harm rather than remedying the legal issues the

Plaintiffs faced.  His failure to litigate resulted in the dismissal of the Connecticut District Court

Action.  In addition, the default judgments entered in the State Court Cases against the Plaintiffs

and were a direct result of the Defendant's false representations.  Consequently, arrest warrants

were issued and served on Plaintiffs Ruszkowski and Green, and Plaintiff Griffith received a

Notice of Sale of Real Property ordering her home to be sold at auction.  Ultimately, these false

representations culminated in the Plaintiffs hiring new counsel in the Connecticut District Court

Action, hiring new counsel in all of the State Court Cases to set aside default judgments, arrest

warrants, and the sale of real property, and hiring new counsel to commence and litigate the

Illinois District Court Action against the Defendant for malpractice.

As set forth above, the Plaintiffs have established all five elements required to

successfully prove a section 523(a)(2)(A) claim.  The Plaintiffs are therefore entitled to summary

judgment on Count One of the Complaint.

**B.**     **Count Two: fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).**

To prevail on a claim under section 523(a)(4), the Plaintiffs must establish two elements:

"(i) the existence of a fiduciary relationship between the [p]laintiff and the [d]efendant; and (ii) a

[fraud or] defalcation committed by the [d]efendant in the course of that relationship." *In re*

*Fritzson*, 590 B.R. 178, 192 (Bankr. D. Conn. 2018) (quoting *Beaulieu v. Fox (In re Fox)*, 2017

WL 564499, at *3 (Bankr. D. Conn. Feb. 10, 2017); *Mirarchi v. Nofer (In re Nofer)*, 514 B.R.

346, 353 (Bankr. E.D.N.Y. 2014)).  The Plaintiffs have established the elements required to

successfully prove a section 523(a)(4) claim, as discussed below.

### (1) The existence of a fiduciary relationship
### between the Plaintiffs and the Defendant

As to the first element of a section 523(a)(4) claim, the Bankruptcy Code does not define

what constitutes a "fiduciary relationship." *See In re Fritzson*, 590 B.R. at 192.  While the

definition of fiduciary for the purposes of section 523(a)(4) is generally a matter of federal law,

*In re Gucciardo*, 577 B.R. 23, 33 (Bankr. E.D.N.Y. 2017), "its application frequently turns upon

obligations attendant to relationships governed by state law," *Andy Warhol Found. v. Hayes (In*

*re Hayes)*, 183 F.3d 162, 166 (2d Cir. 1999).

Under Connecticut law, a fiduciary relationship "is a relationship that is characterized by

a unique degree of trust and confidence between the parties, one of whom has superior

knowledge, skill or expertise and is under a duty to represent the interests of the other."

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 429 (2d Cir. 1999).  "In

the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a

fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a

relationship of dependency, or was under a specific duty to act for the benefit of another."  *In re*

*Hall*, 483 B.R. 281, 292 (Bankr. D. Conn. 2012) (citing *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*,

255 Conn. 20, 38, 761 A.2d 1268 (2000)).

The Connecticut Supreme Court has held that attorney-client relationship is fiduciary in

nature, *See Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48,

56–57 (1998).  Here, the Defendant owed a fiduciary duty to the Plaintiffs because he was hired

by them to act as their attorney in the Connecticut District Court Action and State Court Cases.

Therefore, a fiduciary relationship existed between the Defendant and the Plaintiffs.

28

### (2) A fraud or defalcation was committed
### by the Defendant in the course of the fiduciary relationship

A defalcation may include "failure to produce funds entrusted to a fiduciary and applies

to conduct that does not necessarily reach the level of fraud, embezzlement, or

misappropriation." *In re Mulligan*, 577 B.R. 6 (Bankr. D. Conn. 2017) *aff'd sub nom. Mulligan

v. Jalbert*, No. 3:17-CV-01873 (JAM), 2018 WL 7506431 (D. Conn. May 3, 2018), *aff'd sub

nom. In re Mulligan*, 763 F. App'x 70 (2d Cir. 2019); *In re Hall,* 483 B.R. 281, 294 (Bankr. D.

Conn. 2012). Defalcation includes ". . . not only conduct that fiduciary knows is improper but

also reckless conduct of the kind that the criminal law often treats as the equivalent. *Bullock v.

BankChampaign, N.A.*, 569 U.S. 267, 724 (2013).

Here, the Defendant committed defalcation on a continuous and ongoing basis throughout

the course of the attorney-client relationship with the Plaintiffs. From October 2016 to March

2018, the Defendant collectively billed the Plaintiffs $29,643.72, and the Plaintiffs paid the

Defendant's invoices in full. Throughout the course of their attorney-client relationship, the

Defendant committed defalcation because he was entrusted with funds to act on behalf of the

Plaintiffs, and the Defendant did not use those funds for their intended purpose.

The Defendant was a licensed attorney in Connecticut and therefore knew such conduct

was improper. Nevertheless, defalcation does not require "actual knowledge" to rise to the

misconduct set forth in section 523(a)(4): "where actual knowledge of wrongdoing is lacking, we

consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to)

'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty."

*Bullock*, 569 U.S. at 724.

Accordingly, the Plaintiffs have established that the Defendant owed them a fiduciary duty, and that the Defendant committed a defalcation during the course of that relationship. Therefore, the Plaintiff is entitled to summary judgment on Count Two of the Complaint.

**C.**     **Count Three:  Plaintiffs pre-judgment interest and reasonable attorney's fees and costs awarded by the Court in the Illinois District Court Action are non-dischargeable debts**

The Plaintiffs also seek summary judgment with regard to the attorneys fees and costs awarded in the Illinois District Court Action.  Although there is no controlling precedent in the Second Circuit as to whether fees and costs awarded as part of a judgment are also part of the debt in non-dischargeable proceedings, bankruptcy courts in this district have held such costs and fees to be non-dischargeable.  *See e.g., In re Thompson*, 511 B.R. 20, 33 (Bankr. D. Conn 2014) (holding cost and fees awarded by the Connecticut Superior Court are dischargeable under either 11 U.S.C. §§ 523(a)(2)(A) or (a)(6)).

Furthermore, when an ancillary debt would not exist but for a non-dischargeable debt, such as attorney's fees and costs awarded in a prior action, this district has also held such debts to be non-dischargeable under section 523(a)(2)(A).  *see Roberti II*, 201 B.R. at 623, *citing to In re Weinstein*, 173 B.R. at 273-275 ("To discharge an ancillary debt which would not exist but for a non-dischargeable debt seems erroneous.").  When the award of punitive damages is a direct consequence of the debtor's improper conduct, those damages should not be excepted from discharge. *Roberti II*, 201 B.R. at 623, citing to *In re Weinstein*, 173 B.R. at 272.

Here, the fees and costs awarded in the Illinois District Court default judgment established that the debt arose from the misrepresentations and defalcation described in Counts One and Two, *supra*.  The attorney costs and fees incurred in the Illinois District Court Action arose out of the Defendant's conduct.  But for the Defendant's misrepresentations to the

Plaintiffs and failure to act in the Connecticut District Court Action and the State Court Cases, the Plaintiffs would not have been defaulted or incurred the attorney's fees and costs required to litigate those cases.

As to the pre-judgment interest requested by the Plaintiffs, this district has held pre-judgment interest and attorney fee awards are non-dischargeable, and the Plaintiffs are entitled to pre-judgment interest under applicable non-bankruptcy law. *See e.g., In re George*, 205 B.R. 679, 682 (Bankr. D. Conn. 1997), citing to *Roberti II*, 201 B.R. at 623.

For the reasons set forth above, the Plaintiff is entitled to summary judgment on Count Three of the Complaint.

## VI.    <u>CONCLUSION AND ORDER</u>

The Plaintiffs have established that no issue of material fact exists to be tried in this adversary proceeding and that they are entitled to a judgment as a matter of law that the debts owed to them by the Defendant are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), and 523(a)(4).

Accordingly, it is hereby

**ORDERED:**  The Motion for Summary Judgment is **GRANTED** and the debt owed to the Plaintiffs by the Defendant is deemed non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), and 523(a)(4); and it is further

**ORDERED:**  A separate judgment shall enter in accordance with this opinion.


Dated at Bridgeport, Connecticut this 20th day of January, 2023.



Julie A. Manning
United States Bankruptcy Judge
District of Connecticut